**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3024
_____

Arkansas Oil and Gas, Inc.,  *
                     *

      Appellant,     *
                     *

  v.               *
                     *

Commissioner of Internal Revenue,         *
                     *

      Appellee.      *
_____

No. 96-3025
_____

Dale S. Braden,        *
                     *

      Appellant,     *
                     *

  v.               *
                     *

Commissioner of Internal Revenue,         *
                     *

      Appellee.      *

Appeals from the
United States Tax Court.

———————

No. 96-3026

———————

Arkansas Leasing Service, Inc.,                                          *
                                                *
        Appellant,              *
                                                *
    v.                          *
                                                *
Commissioner of Internal Revenue,                               *
                                                *
        Appellee.              *

                    ———————

                Submitted:  April 14, 1997

Filed:  June 11, 1997

                    ———————

Before LOKEN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
                    ———————

MAGILL, Circuit Judge.

    The Commissioner of the Internal Revenue Service
(Commissioner) issued notices of federal income tax
deficiencies and penalties to Arkansas Oil & Gas, Inc.
(Arkansas Oil & Gas), Arkansas Leasing Service, Inc.
(Arkansas Leasing), and Dale S. Braden (collectively, the
taxpayers).  Braden, an attorney who specializes in oil
and gas matters, is the sole stockholder of both Arkansas
Oil & Gas and Arkansas Leasing.  Each of the taxpayers,
through their counsel, Stephen E. Adams, filed a timely
petition in the tax court for a redetermination of the
asserted tax deficiencies and penalties.  After the
taxpayers failed to prosecute their claims and after they

failed to appear at trial, the tax court dismissed the taxpayers' petitions for failure to prosecute and sustained the Commissioner's determinations of tax deficiencies and penalties for each

taxpayer. The taxpayers did not timely appeal this dismissal, but instead filed motions with the tax court requesting that the tax court vacate its dismissal orders and reopen their cases. The tax court denied the taxpayers' motions to vacate, and the taxpayers appeal this denial. Because the tax court lacks jurisdiction to hear the motions brought by the taxpayers, we vacate the tax court's denial of the taxpayers' motions to vacate.

## I.

In December 1992, the Commissioner issued notices of federal income tax deficiencies and penalties to each of the taxpayers, asserting numerous tax deficiencies and penalties for various years from 1980 through 1988. The asserted tax deficiencies and penalties totaled more than $1.2 million. The Commissioner sought these deficiencies and penalties on the ground that the taxpayers had engaged in tax evasion and fraud.

The taxpayers chose Adams, an attorney certified to practice before the tax court, to represent them in this matter. In response to the Commissioner's notices, each of the taxpayers, through Adams, filed a timely petition in the tax court on March 29, 1993, for a redetermination of the tax deficiencies and penalties.

According to the taxpayers, sometime between March 29, 1993, and June 1993, Adams began to suffer from severe and debilitating psychological problems that prevented him from prosecuting the taxpayers' redetermination claims. During the period from June 4, 1993, the date on which the Commissioner filed answers to

the taxpayers' petitions, through March 21, 1994, the date on which the taxpayers' petitions were set for trial, neither the taxpayers nor Adams replied to the Commissioner's answers to the taxpayers' petitions. Furthermore, neither the taxpayers nor Adams responded to numerous motions, requests, and telephone calls made by the Commissioner. Finally, neither the taxpayers nor Adams conducted discovery, responded to numerous orders entered by the tax court, or appeared at the

March 21, 1994 trial of their cases. The taxpayers failed to take action during this period notwithstanding that Adams was duly notified of each of the various motions and orders and notwithstanding that the tax court sent several notices to Adams, warning him that failure to appear might result in the dismissal of the taxpayers' petitions and entry of decisions for the Commissioner.

Despite Adams's alleged psychological problems during this period, he remained a member of the bar until at least April 19, 1996. On April 1, 1994, and April 24, 1996, Adams's office acknowledged receipt of documents regarding the taxpayers that had been sent by the Commissioner via certified mail. Moreover, according to the Commissioner, none of the correspondence sent to Adams was ever returned.

On October 31, 1994, the tax court entered orders, dismissing each of the taxpayers' petitions for failure to prosecute as well as sustaining the Commissioner's determinations of federal income tax deficiencies and penalties. The tax court concluded that the taxpayers had "clearly indicated, as shown by [their] conduct and the overall record in this case, that [they] no longer wishe[d] to contest any issue involved in this case." Arkansas Oil & Gas Mem. Op. (Oct. 11, 1994) at 7, reprinted in Appellant's Add. at 8; Braden Mem. Op. (Oct. 11, 1994) at 6, reprinted in Appellant's Add. at 23; Arkansas Leasing Mem. Op. (Oct. 11, 1994) at 6, reprinted in Appellant's Add. at 38. With respect to the proposed deficiencies and penalties, the tax court held that, "[i]n light of the record taken as a whole and reasonable inferences therefrom, we now find that the facts in this case show, by clear and

convincing evidence, that [the taxpayers] intended to evade taxes known to be owing for the tax years at issue by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Arkansas Oil & Gas Mem. Op. at 14, reprinted in Appellant's Add. at 15; Braden Mem. Op. at 29, reprinted in Appellant's Add. at 8; Arkansas Leasing Mem. Op. at 13, reprinted in Appellant's Add. at 45. Notices of the October 31, 1994 orders were sent to Adams.

Although Braden "stayed in contact with Mr. Adams on a[n] as needed basis," Dale S. Braden Aff. (Feb. 29, 1996) at 1, reprinted in Arkansas Oil & Gas App. at 249C, the taxpayers allege that Adams never advised the taxpayers of his psychological problems and that the taxpayers did not immediately learn of Adams's inability and complete failure to prosecute their claims. Indeed, according to Braden, the taxpayers "first had knowledge of a problem when [Braden] began receiving notices of Internal Revenue Service assessments." Id. at 2, reprinted in Arkansas Oil & Gas's App. at 249D. The first such notice that Braden received was dated March 29, 1995, nearly two years after the onset of Adams's alleged psychological problems. Id. Thus, by the time Braden received the March 29, 1995 notice of assessment from the Commissioner, the tax court had already entered its October 31, 1994 judgment against the taxpayers.

Nearly one year after Braden received the March 29, 1995 notice of assessment from the IRS, each of the taxpayers filed a motion to vacate the tax court's adverse judgment as well as a motion to reopen each of their respective cases. Braden and Arkansas Oil & Gas filed their motions to vacate and reopen on March 19, 1996. Arkansas Leasing filed its motions on March 22, 1996.

In support of their motions to vacate, the taxpayers claimed that the Commissioner and the tax court violated the taxpayers' due process rights by failing to inform them of Adams's "constructive disappearance." See Arkansas Oil & Gas Mot. to Vacate (Mar. 19, 1996) at ¶ 2, reprinted in Arkansas Oil & Gas App. at 234; Braden Mot. to Vacate (Mar. 19, 1996) at ¶ 2, reprinted in Braden

App. at 242; Arkansas Leasing Mot. to Vacate (Mar. 22, 1996) at ¶ 2, <u>reprinted in</u> Arkansas Leasing App. at 174. The taxpayers also claimed that the Commissioner should have notified them directly of its adverse decision after it became "obvious that counsel was not properly representing" the taxpayers.  Arkansas Oil & Gas Mot. to Vacate at ¶ 3, <u>reprinted in</u> Arkansas Oil & Gas App. at 234; Braden Mot. to Vacate at ¶ 3, <u>reprinted in</u> Braden App. at 242; Arkansas Leasing Mot. to Vacate at ¶ 3, <u>reprinted in</u> Arkansas Leasing App. at 174.  However, the taxpayers neither claimed nor presented any

evidence that, prior to the taxpayers' filing of their motions to vacate, either the Commissioner or the tax court had actual knowledge that Adams was allegedly incapable of prosecuting the taxpayers' redetermination claims or that Adams no longer represented the taxpayers.

On May 16, 1996, the tax court entered an order denying each of the taxpayers' motions to vacate. The taxpayers appeal these orders.[1]

## II.

We must first consider whether the tax court had jurisdiction to hear the taxpayers' motions to vacate as well as to hear their motions to reopen the taxpayers' redetermination claims. We conclude that the tax court did not have jurisdiction to hear the taxpayers' motions.

We review de novo the issue of whether a tax court has jurisdiction to hear a motion. See Nordvik v. Commissioner, 67 F.3d 1489, 1491 (9th Cir. 1995), cert. denied, 116 S. Ct. 1682 (1996); Harbold v. Commissioner, 51 F.3d 618, 621 (6th Cir. 1995). Absent extraordinary circumstances, the tax court lacks jurisdiction to revise or modify its decisions that have become final. See Webbe v. Commissioner, 902 F.2d 688, 688 (8th Cir. 1990) ("In this case we consider the extent of the power of the United States Tax Court to revise or modify decisions

---

[1]The taxpayers appeal only from the tax court's May 16, 1996 orders. They do not appeal from the tax court's original October 31, 1994 orders, dismissing their claims and sustaining the Commissioner's determinations of tax deficiencies and penalties.

that have become final.  We conclude that there is no such power, at least in the absence of extraordinary circumstances not present here."); <u>accord</u> <u>Nordvik</u>, 67 F.3d at 1491 ("Once [its] decision becomes final, a tax court generally lacks jurisdiction to consider a motion to vacate or revise."); <u>see also</u> <u>Harbold</u>, 51 F.3d at 621 ("[O]nce a decision of the Tax

Court becomes final, the Tax Court no longer has jurisdiction to consider a motion to vacate its decision.").

Except in certain situations not relevant to this appeal, decisions of the tax court become final "[u]pon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time . . . ." I.R.C. § 7481(a)(1) (1994).[2] The time allowed for filing such notice of appeal is "within 90 days after the decision of the Tax Court is entered." I.R.C. § 7483 (1994). However, "[i]f a timely notice of appeal is filed by one party, any other party may take an appeal by filing a notice of appeal within 120 days after the decision of the Tax Court is entered." Id.

It is undisputed that none of the parties to this litigation filed a notice of appeal within 90 days of the tax court's October 31, 1994 orders. Accordingly, the tax court's October 31, 1994 orders were final long before the taxpayers filed their March 1996 motions to vacate those orders and to reopen their redetermination claims. As a result, absent extraordinary circumstances, the tax court did not have jurisdiction to hear the taxpayers' motions.

The taxpayers argue that extraordinary circumstances exist in this case. Specifically, the taxpayers argue that the Commissioner and the tax court violated the

---

[2]The exceptions to this rule are limited to certain cases involving: (1) disputes involving less than $10,000, see I.R.C. §§ 7481(b), 7463 (1994); (2) interest determinations, see I.R.C. § 7481(c) (1994); or (3) estate taxes, see I.R.C. § 7481(d) (1994). None of these exceptions is implicated here.

taxpayers' due process rights.  According to the taxpayers, prior to the expiration of the 90-day period following the entry of the tax court's judgment against each of the taxpayers, the Commissioner and the tax court knew or should have known that Adams was not prosecuting the taxpayers' redetermination claims.  The taxpayers therefore argue that: (1) the Commissioner violated the taxpayers' due process rights by failing to notify the taxpayers that Adams, the attorney selected by the taxpayers to represent

them, was not prosecuting their redetermination claims, and (2) the Commissioner and the tax court violated the taxpayers' due process rights by failing to notify the taxpayers directly of the judgment entered against them.

We find the taxpayers' attempt to shift responsibility to the Commissioner and the tax court for Adams's so-called constructive disappearance to be disingenuous.[3]  First, the taxpayers voluntarily chose Adams to prosecute their claims, and they should not now be heard to complain of his acts or omissions.  Cf. Heim v. Commissioner, 872 F.2d 245, 248 (8th Cir. 1989) ("We therefore conclude that any errors committed by Jukkala, [the taxpayers' attorney,] even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances,' warranting vacation of the tax court decision.  The [taxpayers] voluntarily chose Jukkala to represent them, and they cannot now avoid his acts or omissions in the proceeding.").  Moreover, we find it nearly absurd that the taxpayers now seek to blame the Commissioner and the tax court for the fact that it took the taxpayers almost two years to realize that Adams had failed to prosecute their redetermination claims.  The taxpayers make this argument notwithstanding that Braden "stayed in contact with Mr. Adams on a[n] as needed basis," Braden Aff. at

---

[3]The taxpayers have not sought monetary damages from Adams at least in part because "[i]t appears [Adams's malpractice] insurance coverage may have been exhausted."  Appellants' Reply Br. at 14.

1, <u>reprinted in</u> Arkansas Oil & Gas App. at 249C, and notwithstanding that Braden, himself, is an attorney.[4]

---

[4]We also note that, consistent with the general tenor of this litigation, it took the taxpayers nearly a full year to file their motions to vacate. Braden must have received the Commissioner's March 29, 1995 notice of assessment sometime in April 1995, yet the taxpayers did not file their motions to vacate until March 1996. Notwithstanding this delay, the taxpayers offer no evidence in the record that would support an explanation for why it took them so long to file their motions to vacate.

Furthermore, in urging that the Commissioner should have informed the taxpayers that Adams was not properly representing them, the taxpayers essentially claim that they were denied their right to effective assistance of counsel. Cf. Heim, 872 F.2d at 247 (concluding that "the [taxpayers'] argument here is essentially directed toward the adequacy of the representation that they received" where taxpayers argued that the tax court's denial of their motions for leave to file a motion to vacate should be reversed because their attorney was grossly negligent). However, the taxpayers did not have a right to effective assistance of counsel in these proceedings. See Keene Corp. v. Cass, 908 F.2d 293, 297 n.3 (8th Cir. 1990) ("[T]here is no constitutional right to effective assistance of counsel in a civil case." (citing Glick v. Henderson, 855 F.2d 536, 541 (8th Cir. 1988); Allen v. Barnes Hosp., 721 F.2d 643, 644 (8th Cir. 1983))). As a result, the Commissioner could not have violated, and therefore did not violate, the taxpayers' right to effective assistance of counsel.

Finally, for purposes of the jurisdictional issue presented here and based on the facts of this case, it was not an extraordinary circumstance that the Commissioner and the tax court notified only Adams of the judgment entered against the taxpayers. As a general rule, in civil proceedings, "clients must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 396 (1993); cf. United States v. Boyle, 469 U.S. 241, 249-50 (1985) (With respect to the filing of federal estate tax returns, "Congress has placed the burden of prompt filing on the

executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations. . . . That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute."). The Court has explained that, under "our system of representative litigation, . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Pioneer Inv. Servs., 507 U.S. at 397 (quotations and citations omitted).

In the present action, the taxpayers do not claim, nor is there any evidence in the record, that Adams received inadequate notice of the judgment entered against the taxpayers. Moreover, there is no evidence that either the Commissioner or the tax court had actual knowledge of Adams's alleged inability to prosecute the taxpayers' petitions. As a result, when Adams received notice of the judgment entered against the taxpayers, the taxpayers were "considered to have notice of" the judgment entered against them because notice of the judgment "can be charged upon the[ir] attorney." Id. (quotations and citations omitted). Thus, in the present action, no extraordinary circumstances exist that would give the tax court jurisdiction to hear the taxpayers' motions.

Because the tax court did not have jurisdiction to hear the taxpayers' motions, it could not have granted those motions. Accordingly, we vacate the tax court's orders denying the taxpayers' motions to vacate. Thus, we leave undisturbed the tax court's October 31, 1994 orders dismissing the taxpayers' petitions and sustaining the Commissioner's asserted tax deficiencies and penalties.

A true copy.


        Attest:


              CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


- 18 -