DAVENPORT RECYCLING ASSOCIATES and Sam Winer, Tax Matters Partner, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee,

Ernest C. Karras, Marion K. Karras, Appellants.

No. 99-10679.

United States Court of Appeals,

Eleventh Circuit.

Aug. 2, 2000.

Appeal from the United States Tax Court.(Tax Court No. 128801-89), Howard Dawson, Jr., Judge.

Before COX, BIRCH and BARKETT, Circuit Judges.

BARKETT, Circuit Judge:

Ernest C. Karras and Marion K. Karras ("the Karrases") appeal from an order of the United States Tax Court, issued after an evidentiary hearing, denying them leave to file a motion to vacate the assessment of tax liability arising from a partnership in which they were limited partners.[1] On appeal, the Karrases argue that the denial should be reversed because the Tax Court lacked jurisdiction to assess the tax in the first instance and because the order was procured by fraud on the court. Because we conclude that the Tax Court did not abuse its discretion, we affirm.

## BACKGROUND

In 1982, the Karrases purchased an interest in a limited partnership known as Davenport Recycling Associates ("Davenport"). Sam Winer was the sole general partner of Davenport and served as its Tax Matters Partner ("TMP")—the person empowered to act as an agent on behalf of the partners in connection with an Internal Revenue Service ("IRS") audit or in any ensuing judicial proceeding. *See* 26 U.S.C. § 6231(a)(7). In 1984, after the Karrases became a limited partner, the IRS determined that Winer had violated 26 U.S.C. § 6700 by promoting or selling recycling partnerships, including Davenport, based on gross

---

[1]*Davenport Recycling Associates v. Commissioner* (*Davenport* ), No. 18417-89 (T.C. Feb. 23, 1994).

valuation overstatements. On April 13, 1984, the government sought an injunction under Section 7408 of the Internal Revenue Code (the "Code" or "IRC") to preclude Winer from representing any partnership, including Davenport, and from engaging in marketing these recycling partnerships. In addition, in 1984, 1986, and 1987, the IRS notified all of the Davenport partners that their tax returns for 1982, 1983, 1984, and 1985 were to be audited pursuant to the uniform partnership audit procedures (the "TEFRA Audit Rules") of the Code, 26 U.S.C. §§ 6221-6233.[2] During this period, Winer consented to the injunction, and on February 18, 1986, the district court enjoined him from taking any action to organize, promote, or sell tax shelters. The order also required Winer to resign as TMP of all partnerships including Davenport, to send notice of his resignation to the limited partners, and to waive his right to intervene in any court proceedings as TMP. Winer complied, and advised the other Davenport partners about the provisions of the order. The government selected DL & Associates ("DL"), one of the limited partners in Davenport, to serve as the replacement TMP.

In May 1986, however, Winer became aware of a recently-published proposed Treasury regulation, Prop. Reg. § 301.6231(a)(7)-1, 51 Fed.Reg. 13231, 13245 (Apr. 18, 1986), which stated that only a general partner could serve as TMP. Because DL was only a limited partner the partnership lacked a functioning TMP with whom the IRS could transact official business. Thus, the IRS and Winer, through a joint motion, obtained permission from the court for Winer to act as TMP for the purpose of providing "administrative services" to the partnership. In conjunction with these "administrative services," Winer signed consents to extend the statute of limitations on audits for Davenport's taxable years 1982-1985, and the IRS proceeded to audit Davenport for those years.[3]

---

[2]In 1982, as part of the Tax Equity and Fiscal Responsibility Act ("TEFRA"), *see* Pub.L. No. 97-248, § 402(a), 96 Stat. 324, Congress enacted the unified partnership audit examination and litigation provisions of the Code, now found at 26 U.S.C. §§ 6221-6234. These provisions centralized the treatment of partnership taxation issues, and "ensure[d] equal treatment of partners by uniformly adjusting partners' tax liabilities." *Kaplan v. United States,* 133 F.3d 469, 471 (7th Cir.1998).

[3]Generally, there is a three-year statute of limitations for the assessment and collection of federal income taxes. *See* IRC § 6501(a). This statute of limitations can be extended by the execution of an agreement between the IRS and the taxpayer or the taxpayer's authorized representative. *See* IRC § 6501(c). The

On May 15, 1989, the IRS issued its Final Partnership Administrative Adjustments ("FPAA") report for Davenport's taxable years l982-l985 to Winer and to all of Davenport's partners, disallowing deductions and credits claimed by Davenport for its 1982-1985 taxable years.[4] Winer filed a protest with the IRS, in response to which the IRS proposed a settlement which was rejected by the Davenport partners, including the Karrases. Winer then appealed the assessment to the Tax Court.[5] Although Winer informed the other partners that a petition for appeal was filed, no other partner filed a petition, and no partner moved to participate in Winer's appeal under IRC § 6226(c).[6]

Before the Tax Court, both Winer and the IRS alleged that Winer was the TMP of the partnership, and Winer, on behalf of Davenport, subsequently conceded the adjustments proposed by the IRS. The IRS moved for an entry of decision. On February 23, l994, the Tax Court entered its order affirming the adjustments and assessing the tax as established in the IRS audit report. Although he was required to do so by Tax Court Rule 248(b)(3), Winer failed to serve the Davenport partners with a copy of the IRS's motion

---

Davenport partnership filed its l982 return on April 15, l983, and the statute of limitations would have expired on April 15, l986. On October 8, l985, Winer signed a consent extending the statute of limitations for the 1982 return to December 31, l987; on November 19, 1987, Winer again signed consents extending the statute of limitations for the 1982-84 returns to December 31, 1989; and on November 1, 1988, Winer signed a consent extending the statute of limitations on the 1985 return to December 31, 1989.

[4]Under TEFRA, the Commissioner must notify partners of the beginning and end of partnership-level administrative proceedings, and if the Commissioner disagrees with the partnership's reporting of any partnership item, he must send all notice partners a notice of the FPAA before making any assessment attributable to this item. *See* IRC § 6223.

[5]Under Section 6226(b)(1), the TMP may, within 90 days, contest the FPAA by filing a petition for readjustment of partnership items in the Tax Court, the Court of Federal Claims, or the appropriate federal district court. If no such petition is filed by the TMP within that period, any notice partner or five-percent group may file a petition within the next 60 days. *See* IRC § 6226(b)(1).

[6]Under Section 6226(c), any partner with an interest in the outcome of the proceeding is entitled to participate in an action brought by the TMP or a notice partner, thereby ensuring that all partners may litigate a dispute with the IRS in a single proceeding.

3

for entry of decision, the proposed decision, the certificate of filing, or a copy of Tax Court Rule 248.[7]  On December 1, 1994, the Davenport partners, including the Karrases, received a notice of deficiency from the IRS for the tax, penalties, and interest due.

On January 23, 1996, almost two years after the Tax Court's decision, the Karrases sought leave to file a motion to vacate the decision in the *Davenport* case.  The Karrases claimed that the Tax Court did not have jurisdiction in the *Davenport* proceeding because Winer lacked the authority either to consent to extend the statute of limitations or to represent the partnership in the Tax Court because he had been previously ousted as TMP. Finally, the Karrases argued that the Tax Court's decision should be vacated because it was procured by fraud on the court because the IRS had failed to inform the court that Winer had been enjoined from acting as Davenport's TMP.

The Tax Court denied relief, holding that "allegations concerning the period of limitations constitute an affirmative defense, not a plea to the jurisdiction of this Court," that the Davenport partners ratified the filing of the petition by Winer, and that Winer's failure to notify the limited partners of his decision to enter into a settlement with the IRS "does not justify the extraordinary relief of vacating the final decision in this case."  The court also rejected the Karrases' argument that the IRS's attorneys committed fraud on the court. The Karrases now appeal.

We agree with our sister circuits that we must review the Tax Court's denial of leave to file a motion to vacate for abuse of discretion.[8]  *Harbold v. Commissioner,* 51 F.3d 618, 621 (6th Cir.1995); *Abatti v.*

---

[7]While the TMP is required to notify nonparticipating partners of a motion for entry of decision, *see* IRC § 6223(g), the TMP's failure to do so "does not affect the applicability of any proceeding or adjustment under this subchapter to such partner."  IRC § 6230(f).

[8]The Karrases' brief states that "[w]hether the Tax Court applied the correct legal standard in denying Taxpayers' Motion for Special Leave to File Motion for Reconsideration Decision or to Vacate Decision in this case is a question of law subject to *de novo* review.  *Billingsley v. Commissioner,* 868 F.2d 1081 (9th Cir.1989);  *Abeles v. Commissioner,* 90 T.C. 103, 105, 106 (1988);  *Brannon's of Shawnee, Inc. v. Commissioner,* 69 T.C. 999, 1002 (1978);  *Abatti v. Commissioner,* 859 F.2d 115 (9th Cir.1988), *aff'g* 86 T.C. 1319 (1986);  *Senate Realty Corp. v. Commissioner,* 511 F.2d 929, 931 (2d Cir.1975)."  However, the above cases do not stand for this proposition.  Rather, these cases establish that we review de novo the question

4

*Commissioner,* 859 F.2d 115, 117 (9th Cir.1988); *Senate Realty Corp. v. Commissioner,* 511 F.2d 929, 931 (2d Cir.1975); *see also Drobny v. Commissioner,* 113 F.3d 670, 676 (7th Cir.1997) ("a Tax Court ruling denying a motion to vacate is reviewed under the abuse of discretion standard"). We will reverse for abuse of discretion only if we have a definite and firm conviction that the Tax Court committed a clear error of judgment in the conclusion it reached. *Abatti,* 859 F.2d at 117; *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985). The Tax Court's factual findings are reviewed for clear error. *Blohm v. Commissioner,* 994 F.2d 1542, 1548 (11th Cir.1993); *Atlanta Athletic Club v. Commissioner,* 980 F.2d 1409, 1411 (11th Cir.1993). The Tax Court's rulings on the interpretation and application of the Code are conclusions of law which we review *de novo. Blohm,* 994 F.2d at 1548.

DISCUSSION

The basic question before us in this case is whether the Tax Court abused its discretion in denying the Karrases' motion for leave to file a motion to vacate its decision. Sections 7481(a)(1) and 7483 of the Code provide that a decision of the Tax Court becomes final 90 days after entry if no party files a notice of appeal. *See* IRC §§ 7481(a)(1), 7483; *Roberts v. Commissioner,* 175 F.3d 889, 892 (11th Cir.1999). A motion to vacate must be filed "within 30 days after the decision has been entered unless the Court shall otherwise permit." Tax Court Rule 162. Courts that have applied these provisions have uniformly held that, as a general rule, the Tax Court lacks jurisdiction to vacate a decision once it becomes final. *See Arkansas Oil & Gas, Inc. v. Commissioner,* 114 F.3d 795, 798 (8th Cir.1997); *Abatti,* 859 F.2d at 117; *see also Commissioner v. McCoy,* 484 U.S. 3, 6, 108 S.Ct. 217, 98 L.Ed.2d 2 (1987) ("The Tax Court is a court of limited jurisdiction," and, unlike an Article III federal court, "lacks general equitable powers."); *Drobny,* 113 F.3d at 677 ("The authority of a court of limited jurisdiction to vacate final judgments has been narrowly construed"); *Curtis v. Commissioner,* 72 T.C.M. (CCH) 369, 371 (1996) (holding that once a decision of the

---

whether the Tax Court had jurisdiction to grant a motion for leave to vacate, and not the Tax Court's denial of such leave. *See Abatti,* 859 F.2d at 117. In the case at hand, the IRS does not argue that the Tax Court did not have jurisdiction to grant the motion for leave to vacate the *Davenport* decision, rather it argues that while the Tax Court had jurisdiction to grant the motion, the Tax Court properly refused to do so.

Tax Court has become final, it may be vacated "only in certain narrowly circumscribed situations").

However, narrow exceptions to this rule have been permitted when: (1) the decision is shown to be void or a legal nullity for lack of jurisdiction over either the subject matter or a party; (2) there has been fraud on the court; or (3) the decision was based on mutual mistake. *See Billingsley v. Commissioner,* 868 F.2d 1081, 1084-85 (9th Cir.1989); *Abatti,* 859 F.2d at 118; *La Floridienne J. Buttgenbach & Co. v. Commissioner,* 63 F.2d 630, 631 (5th Cir.1933); *see also Roberts,* 175 F.3d 889, 893 n.3 (citing exceptions which have been permitted). The Karrases argue that the first two exceptions apply, rendering the denial of the motion for leave to file a motion to vacate an abuse of discretion. We address each exception in turn.

1.       *The Tax Court's Jurisdiction*

a.       *Subject Matter Jurisdiction*

The Karrases claim that the Tax Court lacked subject matter jurisdiction over the *Davenport* case because the statute of limitations barred any tax assessments for the years at issue and Winer lacked the authority to consent to extend the limitations period.[9] We agree with the Tax Court that expiration of the statute of limitations is an affirmative defense that does not implicate the jurisdiction of the court.

Subject matter jurisdiction defines a court's authority to hear a particular type of case. *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). The expiration of a statute of limitations is an affirmative defense that may be pled in a case which is already within the court's authority to decide, and the ability of a party to assert such a defense has nothing to do with the court's power to resolve the case. *See Compagnoni v. United States,* 173 F.3d 1369, 1370 n. 3 (11th Cir.1999) ("In most cases, a defense based on a statute of limitations does not implicate the court's subject matter jurisdiction."); *Chimblo v. Commissioner,* 177 F.3d 119, 125 (2d Cir.1999); *see also Pugh v. Brook (In re Pugh ),* 158 F.3d 530, 533-34 (11th Cir.1998) (noting that "true statutes of limitations" do not constitute grants of subject matter

_____

[9]Under § 6229(b)(1)(B), the statute of limitations on assessment of a partnership may be extended "with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner" before the expiration of such period. IRC § 6229(b)(1)(B).

6

jurisdiction, but rather "restrict the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction"). This precedent is clearly applicable to tax matters. Expiration of a statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional. *See Columbia Bldg., Ltd. v. Commissioner,* 98 T.C. 607, 611 (1992); *see also Stange v. United States,* 282 U.S. 270, 276, 51 S.Ct. 145, 75 L.Ed. 335 (1931) (finding that a consent to extend the statute of limitations under § 6501 "is essentially a voluntary, unilateral waiver of a defense by the taxpayer"); *Robinson v. Commissioner,* 57 T.C. 735, 737 (1972) ("The statute of limitations is a defense in bar and not a plea to the jurisdiction of this court."). In addition, Rule 39 of the Tax Court Rules and Procedure recognizes that passage of the statute of limitations is an affirmative defense: "[a] party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations."

The Karrases contend that they should prevail on this issue under the rationale of *Transpac Drilling Venture 1982-12 v. Commissioner,* 147 F.3d 221 (2d Cir.1998). This reliance is misplaced. First, *Transpac* did not involve a question of jurisdiction. The Karrases argue that because the court in *Transpac* determined that TMPs who were under criminal investigation by the IRS did not have the authority to extend the statute of limitations, the Karrases should likewise prevail here. However, the procedural posture of *Transpac* is vastly different from that of this case. Unlike the present case, the limited partners in *Transpac,* after receiving the FPAAs, filed a timely petition with the Tax Court, arguing that the consents to extend the statute of limitations were invalid. Under those circumstances, we agree with the Second Circuit that, as a result of being placed under criminal investigations, the TMPs of the various partnerships labored under a conflict of interest and thus could not bind the partnerships to consents to extend the statute of limitation. If this were a direct and timely appeal of the Tax Court's original order, we may well have agreed that Winer had a conflict of interest which would have precluded him from acting on behalf of the partnership. But that is not the issue before us. The statute of limitations challenge in *Transpac* was timely and did not arise in the

7

context of a motion for leave to file a motion to vacate a final Tax Court decision. In contrast to the present case, in which no limited partner raised the issue until two years after the Tax Court's decision became final, numerous limited partners of Transpac "duly objected to the FPAA and requested the appropriate administrative and judicial review." *Id.* at 224.

Moreover, even if the Karrases had filed a timely petition to vacate the Tax Court's order, they would still have to overcome their failure to raise the statute of limitations defense at the partnership-level proceeding. As the Second Circuit held in *Chimblo v. Commissioner,* taxpayers must raise the statute of limitations defense within the context of a partnership-level proceeding. 177 F.3d at 125. In *Chimblo,* the Tax Court had upheld the IRS's assessment against a partnership. Later, individual partners who had not participated in partnership-level proceedings challenged penalties asserted against them, arguing that the statute of limitations had expired prior to the issuance of the assessment. *Id.* at 123. The Second Circuit held that:

> In the context of this case, one involving the application of TEFRA, petitioners had a right to raise the partnership's statute of limitations defense in the earlier partnership-level proceeding but failed to do so. We join the Seventh Circuit, as well as the numerous lower courts that have held that, under TEFRA, a statute of limitations defense concerns a "partnership item," *see* IRC § 6231(a)(3), that must be raised at the partnership level.... Allowing individual taxpayers to raise a statute of limitations defense in multiple partner-level proceedings would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners.

*Id.* at 125 (citations omitted).

In the case at hand, as in *Chimblo,* the Karrases received copies of the FPAAs, and they could have appeared in the partnership proceeding and contested the assessment. *See* IRC § 6226(c). It is not disputed that Winer advised all partners within the statutory time for appealing the assessment that he was filing an appeal on behalf of the partnership. In fact, in the proceedings before the Tax Court, Ernest Karras testified that when he received the assessment notice he chose not to file a petition challenging the assessment in the Tax Court because he knew that Winer had done so.

8

We conclude that the Tax Court did not abuse its discretion in finding that it had jurisdiction to uphold the assessments levied by the IRS.

b.      *Jurisdiction Over the Party*

Alternatively, the Karrases argue that, even if the statute of limitations was properly extended, the Tax Court lacked jurisdiction in the *Davenport* case because Winer had no authority to appear in the Tax Court on behalf of Davenport.[10]  The Karrases argue that the Tax Court erred in concluding that it had jurisdiction on the basis of the doctrine of implied ratification.  Davenport is a New York limited partnership, and the doctrine of implied ratification is recognized in New York. *See IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.,* 26 F.3d 370, 375 (2d Cir.1994).  Ratification "occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement." *Dayton Securities Associates v. Morgan Guaranty Trust Co. (In re The Securities Group),* 926 F.2d 1051, 1055 (11th Cir.1991) (applying New York law); *see also* 57 N.Y.Jur.2d *Estoppel, Ratification and Waiver,* § 76 (1986) ("Acquiescence may give rise to an implied ratification, as where one's conduct subsequent to the transaction complained of supports the conclusion that he has by his assent and acquiescence accepted and adopted it.").

In *Mishawaka Properties Co. v. Commissioner,* 100 T.C. 353 (1993), the Tax Court applied the doctrine of implied ratification to the filing of a petition on behalf of a partnership under TEFRA. *Mishawaka* involved a TEFRA real estate partnership which had no designated TMP. Sol Finkelman, the managing partner, did not have the largest profit interest in the partnership but was the only partner who dealt with the IRS in connection with the audits of the partnership.  Because there was a question about the identity of the TMP, the IRS issued copies of the FPAAs to Finkelman, to the partner with the largest profit interest, and

---

[10]The Tax Court held that Winer had been authorized to file the petition and appear on behalf of Davenport because Winer was the sole general partner of Davenport and had been reinstated as TMP for "administrative services."  The Tax Court alternatively held that, even if Winer was not so authorized, the Karrases impliedly ratified Winer's representation.

9

to the partnership. Finkelman, identifying himself as the TMP, filed a petition contesting the FPAA within the 90 days reserved for filing a petition by the TMP. Before filing the petition, Finkelman had prepared and signed all of the partnership returns, acted as its accountant and managing partner, identified himself as the TMP to the other partners, and advised the other partners that he would file a petition in the Tax Court on their behalf. *Id.* at 356-58.

One year after filing the petition, Finkelman informed the other partners that he could no longer finance the litigation with the IRS and advised them to form committees to finance the litigation. *Id.* at 368. No partner took any action to disavow, repudiate or manifest objection to Finkelman's filing of the petition until four years later, when a participant moved to dismiss the case for lack of jurisdiction on grounds that Finkelman was not the proper TMP and that the statute of limitations on assessment had expired. *Id.* at 358-59. The Tax Court denied the participant's motion to dismiss for lack of jurisdiction, holding that the partners had impliedly ratified Finkelman's imperfect petition when they failed to object to it despite knowing of the assessment, of Finkelman's representation of the partnership before the IRS, and of Finkelman's petition on the partnership's behalf.

In this case, Winer signed Davenport's tax returns, represented the partnership during the audit, notified the partners of the IRS's settlement offer and of his intention to file a petition on behalf of the partnership, and filed an appeal to the Tax Court on behalf of the partnership. The Karrases and the other partners were notified at the beginning of the audit of Davenport and received copies of the audit report and the assessment. The Karrases also knew that Winer was representing the partnership before the IRS and the Tax Court. In fact, when, after informing the partners of the injunction against him, Winer informed the partners of his intention to appeal to the Tax Court, none of the partners questioned his authority to do so. We conclude that the Tax Court did not abuse its discretion in concluding that the Karrases, who waited until 1996 to repudiate the petition that they knew Winer had filed in 1989, accepted the benefit of Winer's allegedly unauthorized act and impliedly ratified it.

10

*2.*        _Fraud on the Court_

The Karrases' final argument is that because the decision was procured by fraud on the court, the Tax Court erred in refusing to grant leave to file a motion to vacate its decision. In the context of a motion to vacate a final Tax Court decision, "fraud upon the court" is narrowly construed. *See Drobny,* 113 F.3d at 678; *Harbold,* 51 F.3d at 622; *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989); *Abatti,* 859 F.2d at 118. It has been found only in those instances where the fraud vitiates the court's ability to reach an impartial disposition of the case before it. *See Harbold,* 51 F.3d at 622. "Fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision," preventing the opposing party "from fully and fairly presenting his case." *Abatti,* 859 F.2d at 118; *see also Heim v. Commissioner,* 872 F.2d 245, 246 (8th Cir.1989) (finding no fraud upon the court found where taxpayers claimed that their attorney entered into misleading and inadequate stipulations); *Anderson v. Commissioner,* 693 F.2d 844, 846 (9th Cir.1979) (finding no fraud upon the court where taxpayer's tax advisors misrepresented themselves as lawyers admitted to practice before the Tax Court); *Senate Realty Corp. v. Commissioner,* 511 F.2d 929, 931 (2d Cir.1975) (holding that although the attorney representing a corporate taxpayer was unauthorized to settle IRS claim against the corporation, the attorney's action in filing settlement stipulation in Tax Court on which judgment was entered did not represent a fraud upon the Tax Court). In this case, based on the totality of the facts, we cannot say that the Tax Court abused its discretion in finding that no fraud was perpetrated on the court.

For all of the foregoing reasons, we conclude that the Tax Court did not abuse its discretion in denying the Karrases leave to file a motion to vacate the Tax Court's order upholding the IRS's assessments against the Davenport partnership.

AFFIRMED.


BIRCH, Circuit Judge, concurs dubitante.

11