129 T.C. No. 3


UNITED STATES TAX COURT


MICHAEL V. DOMULEWICZ AND MARY ANN DOMULEWICZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10434-05.                    Filed August 8, 2007.


        As part of a Son-of-BOSS transaction designed to
create a basis of approximately $29.3 million in
publicly traded stock purchased at a relatively minimal
cost, P entered into a short sale of U.S. Treasury
notes and contributed the proceeds of that sale and the
related obligation to a partnership (DIP) in which P
was one of three partners.  Neither P nor DIP treated
the obligation assumed by DIP as a liability under sec.
752, I.R.C., and P did not compute his basis in DIP by
taking the obligation into account.  After DIP
satisfied the obligation and received contributions of
the publicly traded stock from its partners, the
partners transferred their interests in DIP to DII, an
S corporation of which they were shareholders.  The
transfer of partnership interests was followed by DII's
receipt of DIP's distributed assets; i.e., the stock
and cash.  DII sold the stock and claimed a resulting
capital loss of $29,306,024.  On Ps' 1999 Federal
income tax return, P claimed his $5,858,801 share of
the reported loss as a passthrough capital loss from

DII.  P claimed that the loss offset a $5,831,772 capital gain that P realized during the year.  In an FPAA pertaining to DIP, R determined that the basis of the stock distributed by DIP was zero and that accuracy-related penalties under sec. 6662, I.R.C., applied.  When no petition was filed as to the FPAA, R did not assess any tax or accuracy-related penalty as to DII's sale of the stock.  Instead, R issued an affected items notice of deficiency to Ps as a predicate to assessing those amounts.  Ps now move the Court to dismiss this case for lack of jurisdiction, asserting that the deficiency procedures of subch. B of ch. 63, I.R.C. (deficiency procedures), do not apply to R's disallowance of the passthrough loss or to R's determination of the accuracy-related penalties.

Held: Sec. 6230(a)(2)(A)(i), I.R.C., makes the deficiency procedures applicable to R's disallowance of the passthrough loss from DII.

Held, further, R's determination of the accuracy-related penalties is not subject to the deficiency procedures by virtue of the parenthetical text added to sec. 6230(a)(2)(A)(i), I.R.C., by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1238(b)(2), 111 Stat. 1026.


David D. Aughtry, Eric M. Nemeth, and Paul L.B. McKenney, for petitioners.

Meso T. Hammoud, for respondent.


OPINION


LARO, Judge:  This is a Son-of-BOSS case that is currently before the Court on petitioners' motion to dismiss for lack of jurisdiction.  See generally Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007), and Notice 2000-44, 2000-2 C.B. 255, for a general description of Son-of-BOSS cases.  Petitioners petitioned

the Court to redetermine respondent's determination of a $2,398,491 deficiency in their 1999 Federal income tax and a $946,750.80 accuracy-related penalty under section 6662(a).[1] Those determinations were reflected in an affected items notice of deficiency issued to petitioners after no partner of DMD Investment Partners (DIP) timely petitioned the Court with respect to a notice of final partnership administrative adjustment (FPAA) mailed to Michael Domulewicz (petitioner) as DIP's tax matters partner (TMP). Copies of the FPAA also were mailed to each of DIP's other partners.

We decide the following issues:[2]

1. Whether section 6230(a)(2)(A)(i) makes the deficiency procedures of subchapter B of chapter 63 (deficiency procedures) applicable to respondent's disallowance of petitioners' claim to a passthrough loss from DMD Investments, Inc. (DII), an S corporation in which petitioner (through his grantor trust) was a

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

[2] We decide these issues with the aid of extensive briefing by the parties. The briefing was in the form of petitioners' memorandum, respondent's response, petitioners' reply, and respondent's response to reply. After the Court filed respondent's response to reply, petitioners moved the Court to allow them to make their arguments at a hearing. We shall deny that motion. The parties have adequately advanced their legal arguments, and further arguments would not significantly aid our decision process. See Rule 50(b)(3).

20-percent shareholder.[3] Petitioners argue that the deficiency procedures do not apply to this item. Respondent argues to the contrary, asserting that a partner-level determination was required as to this item. We agree with respondent.

2. Whether respondent's determination of the accuracy-related penalties is subject to the deficiency procedures. The parties agree that it is not. So do we.[4]

### Background

Petitioners are husband and wife, and they resided in Bloomfield Hills, Michigan, when their petition was filed with the Court. They filed a joint 1999 Form 1040, U.S. Individual Income Tax Return, on or before August 18, 2000.

Petitioner was a 20-percent shareholder of CTA Acoustics (CTA) when CTA was sold on April 30, 1999, at a gain to the shareholders of approximately $30 million. Petitioner's portion

---

[3] DII's other shareholders were the two other partners in DIP. Each of those other shareholders owned a 40-percent interest in DIP and a 40-percent interest in DII.

[4] Petitioners' motion states in part that the Court lacks jurisdiction over both issues because the applicable periods of limitation for assessment of the deficiency and penalties have expired. Because the expiration of the period of limitation is an affirmative defense and does not affect this Court's jurisdiction, see Davenport Recycling Associates v. Commissioner, 220 F.3d 1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); cf. Day v. McDonough, 547 U.S. 198, ___, 126 S. Ct. 1675, 1681 (2006) ("A statute of limitations defense * * * is not 'jurisdictional'"), we reject without further discussion the portion of petitioners' arguments dealing with the period of limitation.

of the gain was $5,831,772, and he implemented a plan promoted by BDO Seidman and Jenkens & Gilchrist to create a $5,858,801 "loss" to report as an offset to that gain.  As discussed in more detail infra, the "loss" was reportedly generated by using a partnership, an S corporation, and a short sale of U.S. Treasury notes to create a basis of approximately $29.3 million in publicly traded stock purchased at a relatively minimal cost.[5] The transaction was similar to the transactions described in Notice 2000-44, supra.

Under the plan, DIP was formed on April 30, 1999, with petitioner as a 20-percent partner and two other individuals (at least one of whom was a 40-percent shareholder of CTA) each with a 40-percent interest.[6]  On July 7, 1999, petitioner entered into a short sale of U.S. Treasury notes with a face value of $5,800,000.[7]  The U.S. Treasury notes matured on May 31, 2001,

---

[5] As we recently explained in Kligfeld Holdings v. Commissioner, 128 T.C. 192, 195 n.6 (2007):

> A short sale is the sale of borrowed securities, typically for cash.  The short sale is closed when the short seller buys and returns identical securities to the person from whom he borrowed them.  The amount and characterization of the gain or loss is determined and reported at the time the short sale is closed.  * * *

[6] Petitioner held his interest in DIP through his grantor trust.  Because all items from DIP flowed directly to petitioner through the grantor trust, we refer to petitioner's interest in DIP as if he owned it directly.

[7] Petitioner entered into the sale through his single-member
(continued...)

and petitioner sold them on July 7, 1999, for $5,791,057.06 (inclusive of $31,614.75 of accrued interest). On July 8, 1999, petitioner contributed to DIP the proceeds of the short sale, the obligation to satisfy the short sale, and $116,000 in "margin cash". Neither petitioner nor DIP treated the short sale obligation assumed by DIP as a liability under section 752, and petitioner did not compute his basis in his interest in DIP by taking that obligation into account. On July 14, 1999, DIP satisfied the short sale obligation (as well as similar short sale obligations assumed from DIP's other partners) by purchasing U.S. Treasury notes with a face value of $29,500,000 for $29,402,053.78 plus accrued interest of $186,188.52 and delivering the U.S. Treasury notes in satisfaction of the short sales.

On August 12, 1999, petitioner transferred to DIP 1,500 shares of publicly traded stock in Integral Vision, Inc. (INVI). On August 23, 1999, DIP sold 4,500 of the 7,500 shares of INVI stock contributed by the partners (in addition to 1,500 shares contributed by petitioner, the other two partners of DIP had contributed a total of 6,000 shares) and claimed a short-term

---

[7](...continued)
limited liability company. Because that company is disregarded as an entity for Federal income tax purposes, see sec. 301.7701-2(c)(2), Proced. & Admin. Regs.; see also Kligfeld Holdings v. Commissioner, supra at 195 n.7, we refer to the sale as if it were entered into directly by petitioner.

capital loss of $2,278. DIP reported as to the claimed loss that the 4,500 shares were purchased on August 11, 1999, at a cost of $10,893 and were sold for $8,615. On August 24, 1999, petitioner transferred his interest in DIP to DII, which had been incorporated approximately 8 months earlier. Petitioner and DII reported that transfer as a nontaxable exchange under section 351, and DII claimed a carryover basis in the transferred partnership interest equal to petitioner's basis in DIP. As a result of this transfer (and similar contemporaneous transfers made by DIP's two other partners), DIP dissolved and all of its assets, including the remaining 3,000 shares of INVI stock, were distributed and received by DII. On DIP's 1999 (final) Form 1065, U.S. Partnership Return of Income, DIP reported for that year that it had realized (1) $1,961 in income, all from tax-exempt interest, and (2) a $110,611 short-term capital loss attributable to the sale of U.S. Treasury notes ($108,333) and the sale of the 4,500 shares of INVI stock ($2,278). DIP also reported that it had paid $167,477 of interest expenses on investment debts and that it had distributed $30,447,106 in cash and/or marketable securities to its partners. Petitioner, as a general partner of DIP, filed DIP's 1999 return no later than April 17, 2000.

At the time of DIP's dissolution, DIP's only assets were the INVI stock and minimal cash. Pursuant to section 732(b), DII

claimed a basis in the INVI stock equal to its basis in DIP.  On December 30, 1999, DII sold some INVI stock for $5,716 and claimed on its 1999 Form 1120S, U.S. Income Tax Return for an S Corporation, that it had realized on the sale a long-term capital loss of $29,306,024.[8]  DII also claimed an ordinary loss of $1,053,400, resulting from its payment of fees to Jenkens & Gilchrist.  As to the claimed losses, an ordinary loss of $210,680 (representing petitioner's share of the fees) and a long-term capital loss of $5,858,801 (representing petitioner's share of the reported capital loss) passed through to petitioner, who claimed them on petitioners' 1999 Federal income tax return.  Petitioners claimed on that return that the $5,858,801 long-term capital loss offset a $5,831,772 long-term capital gain that petitioner had realized on April 30, 1999, from his sale of his stock in CTA.

On October 15, 2003, respondent mailed the FPAA for 1999 to petitioner as DIP's TMP.  Respondent determined in the FPAA that DIP was not entitled to deduct any of the claimed $110,611 short-term capital loss, that DIP was not entitled to deduct any of the claimed $167,477 of interest expenses, that the basis of the property (other than money) distributed by DIP was zero rather

---

[8] DII's 1999 Form 1120S reports that the INVI shares that were the subject of the sale were "acquired" on Dec. 3, 1997. DII's 1999 Form 1120S does not report the number of INVI shares that DII sold on Dec. 30, 1999.

than $30,447,106 as claimed, and that a series of alternative accuracy-related penalties under section 6662 applied. As to these items, respondent determined in the FPAA that: (1) The basis of the property distributed by DIP was zero because DIP failed to substantiate the basis and, alternatively, the outside bases of DIP's partners were not adjusted under section 752 on account of the short sale liability; (2) DIP's claimed short-term capital loss and interest expense were disallowed for lack of substantiation; (3) DIP was a sham and was disregarded, and all transactions it engaged in were treated as engaged directly by the partners; (4) under section 1.701-2, Income Tax Regs., DIP's partners were not treated as partners; (5) under section 1.701-2, Income Tax Regs., contributions to DIP had to be adjusted to reflect clearly the income of DIP and its partners; and (6) the 40-percent accuracy-related penalty under section 6662(a), (b)(3), (e), and (h) was imposed because any underpayment of tax resulting from adjustment of DIP's basis in the stock was due to a gross valuation misstatement; the 20-percent accuracy-related penalty under section 6662(a), (b)(1), and (c) was imposed because any underpayment of tax arising from the adjustment of DIP's basis was due to negligence or disregard of rules and regulations; or, alternatively, the 20-percent accuracy-related penalty under section 6662(a), (b)(2), and (d) was imposed

because any underpayment was attributable to a substantial understatement of tax.

No partner of DIP contested the FPAA timely; i.e., by March 13, 2004, 150 days after its issuance. As a result, respondent assessed the tax and penalties resulting from the disallowance of the short-term capital loss and the interest expense. Petitioners' share of the tax, $19,466, was assessed on November 29, 2004, and their share of the accuracy-related penalties, $3,893.20, was assessed on February 21, 2005. Respondent did not assess any tax or penalty attributable to DII's sale of the distributed stock but issued the affected items notice of deficiency as a predicate to assessing these amounts.

On March 10, 2005, respondent issued to petitioners the affected items notice of deficiency for 1999. In that notice, respondent determined the following three adjustments to income: (1) The reported long-term capital loss was disallowed and the amount realized of $1,143 was a gain given respondent's determination in the FPAA that the basis of the property distributed by DIP was zero; (2) the $210,680 share of expenses was disallowed; and (3) petitioners' computational itemized deductions were adjusted accordingly. Respondent also determined in the affected items notice of deficiency the same set of alternative penalties under section 6662 that the FPAA stated were applicable.

- 11 -

## Discussion

Petitioners argue that the long-term capital gain and accuracy-related penalty determinations in the affected items notice of deficiency are computational adjustments which section 6230(a) places outside the Court's jurisdiction at the partner level.[9]  Respondent argues that the Court has jurisdiction to decide the issue concerning the long-term capital gain but not the issue concerning the accuracy-related penalties.  We agree with respondent.

This Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent provided by

---

[9] In relevant part, sec. 6230(a) provides:

SEC. 6230(a).  Coordination with Deficiency Proceedings.--

(1) In general.--Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.

(2) Deficiency proceedings to apply in certain cases.--

(A) Subchapter B shall apply to any deficiency attributable to--

(i) affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) * * *

Congress. See sec. 7442; see also <u>GAF Corp. & Subs. v. Commissioner</u>, 114 T.C. 519, 521 (2000). We have jurisdiction to redetermine a deficiency if a valid notice of deficiency is issued by the Commissioner and if a timely petition is filed by the taxpayer. See <u>GAF Corp. & Subs. v. Commissioner</u>, <u>supra</u> at 521. We may decide issues only to the extent of our jurisdiction, and the fact that the parties agree that we lack jurisdiction to decide the issue concerning the accuracy-related penalties does not necessarily mean that we indeed lack jurisdiction to decide that issue. See <u>Charlotte's Office Boutique, Inc. v. Commissioner</u>, 121 T.C. 89, 102-104 (2003), affd. 425 F.3d 1203 (9th Cir. 2005).

Partnerships are not subject to Federal income tax. See sec. 701. They are required, however, to file annual information returns reporting their partners' distributive shares of income, gain, loss, deductions, or credits. See sec. 6031; see also <u>Randell v. United States</u>, 64 F.3d 101, 103 (2d Cir. 1995). The partners are required to report their distributive shares of those items on their personal Federal income tax returns. See secs. 701, 702, 703, and 704.

Before 1982, the Commissioner and the courts were required to adjust partnership items at the partner level. See <u>Randell v. United States</u>, <u>supra</u> at 103. Because this requirement resulted in a duplication of administrative and judicial resources and

inconsistent results among partners, Congress enacted the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 401, 96 Stat. 648, intending to remove the substantial administrative burden occasioned by duplicative audits and litigation and to provide consistent treatment of partnership income, gain, loss, deductions, and credits among all partners in the same partnership. See Randell v. United States, supra at 103; H. Conf. Rept. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-663. The TEFRA procedures determine the proper treatment of "partnership items" at the partnership level in a single, unified audit and judicial proceeding. See Randell v. United States, supra at 103; H. Conf. Rept. 97-760, supra at 599-600, 1982-2 C.B. at 662-663. In this context, the term "partnership items" includes any item of income, gain, loss, deduction, or credit that the Secretary has determined is "more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3); see also sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.

Where the Commissioner disagrees with a partnership's reporting of a partnership item, the Commissioner must mail an FPAA before assessing the partners with any amount attributable to that item. See secs. 6223(a)(2), (d)(2), 6225(a). The TMP has 90 days from the date of the mailing of the FPAA to contest

the adjustments in the FPAA by filing a petition in this Court, a Federal District Court, or the Court of Federal Claims.  See sec. 6226(a).  If the TMP does not file such a petition, any other partner entitled to notice of partnership proceedings may file a petition within 60 days after the close of the 90-day period. See sec. 6226(b)(1).  If a petition is filed, all partners with interests in the outcome are treated as parties, see sec. 6226(c), (d)(1)(B), and the court in which the petition is filed has jurisdiction to readjust all "partnership items" to which the FPAA relates, see sec. 6226(f).[10]  The timely mailing of the FPAA to the applicable address suspends the running of the limitations period for assessing any income taxes that are attributable to any partnership item or affected item.  See sec. 6229(d); cf. Martin v. Commissioner, 436 F.3d 1216, 1226 (10th Cir. 2006) (concluding that the filing of a petition for a redetermination of an income tax deficiency suspends the running of the period of

_____

[10] When a proper petition is filed with a court in accordance with sec. 6226(a) or (b), the scope of the court's jurisdiction to review the Commissioner's adjustment to a partnership item is defined by sec. 6226(f) as follows:

> SEC. 6226(f).  Scope of Judicial Review.--A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

limitations for assessment of the taxpayer's income tax, even when the petition is not authorized or ratified by the taxpayer), affg. T.C. Memo. 2003-288, supplemented by T.C. Memo. 2004-14. This suspension continues for the period during which a proceeding may be brought in this Court, for the pendency of any proceeding actually brought, and for 1 year thereafter.  See sec. 6229(d).

After a final partnership-level adjustment has been made to a partnership item in a unified partnership proceeding, a corresponding "computational adjustment" must be made to the tax liability of a partner.  See sec. 6231(a)(6) (defining "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item", and providing that "All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments."); see also sec. 6230(c)(1)(A)(ii).[11]  A computational adjustment may then affect the amounts of other items on a partner's return. Where an increase in a partner's tax liability is attributable to an "affected item" that flows strictly from a computational adjustment, no notice of deficiency need be sent to the partner,

_____

[11] The parties agree that the deficiency determined in the affected items notice of deficiency is a computational adjustment.

and any error in the computational adjustment must be challenged in a refund suit.  See sec. 6230(c); see also sec. 6231(a)(5) (defining "affected item" as "any item to the extent such item is affected by a partnership item").  If an increased liability stemming from an affected item requires a factual determination at the partner level, however, the normal deficiency procedures outlined in sections 6212 and 6213 apply, and the Commissioner must issue an affected items notice of deficiency to the partner in order to assess tax attributable to the affected item.  See sec. 6230(a)(2)(A)(i); see also sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999).[12]

As to respondent's determination in the affected items notice of deficiency concerning the long-term capital gain, the parties dispute whether that computational adjustment required a factual determination at the partner level.  Petitioners argue

---

[12] Sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999), states:

(2) Changes in a partner's tax liability with respect to affected items that require partner level determinations (such as a partner's at-risk amount to the extent it depends upon the source from which the partner obtained the funds that the partner contributed to the partnership) are computational adjustments subject to deficiency procedures.  Nevertheless, any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may be directly assessed following a partnership proceeding, based on determinations in that proceeding, regardless of whether partner level determinations are required.

that such a factual determination was not required.  We disagree.
As to DII's sale of the stock distributed by DIP, respondent
determined in the FPAA only the partnership item components of
any resulting assessment; respondent was required to make further
partner-level factual determinations as to any such assessment.
The claimed long-term capital loss reportedly passed from DII to
petitioner and resulted from DII's sale of INVI stock.
Respondent needed to determine, among other things, whether the
stock that was the subject of the sale was the same stock
distributed by DIP, the portion of the stock actually sold, the
holding period for the stock, and the character of any gain or
loss.  The fact that these partner-level determinations, once
made, may not have changed respondent's partnership
determinations as to DIP is of no concern.  Neither the Code nor
the regulations thereunder require that partner-level
determinations actually result in a substantive change to a
determination made at the partnership level.

    Nor did the FPAA definitively determine the outside basis of
any DIP partner.  Thus, when a partner-level determination is
required to determine a partner's basis, the deficiency
procedures apply although the determination may or may not
actually alter the final result.[13]  See Dial USA v. Commissioner,

---

[13] We note, however, that respondent in the FPAA made
several partnership-item determinations that the partners were
(continued...)

95 T.C. 1 (1990). What the FPAA did do was determine a tentative outside basis of each DIP partner and then transfer that tentative outside basis to the distributed stock under section 732(b). While the tentative basis in the distributed property was zero, and DIP's partners were required by section 732(b) to take bases in the distributed stock equal to their outside bases in DIP, petitioner's outside basis in DIP did not necessarily equal DIP's inside basis in its assets. (Nor was petitioner's outside basis otherwise required under subtitle A to be taken into account for DIP's 1999 taxable year.) According to the FPAA, petitioner's outside basis in DIP was zero, which made the basis of the distributed INVI stock zero and, subject to any partner-level factual determinations, potentially eliminated

---

[13](...continued)
required to take into account in computing their outside bases in DIP. The FPAA, for example, determined that the short sale obligation was a liability under sec. 752. Respondent also determined in the FPAA that DIP's partners received constructive distributions of cash that reduced their outside bases in DIP under sec. 733(1) when their shares of the short sale liability was reduced. See also secs. 705(a)(2), 752(b). Both partnership liabilities and partnership distributions are partnership items within the meaning of sec. 6231(a)(3). See sec. 301.6231(a)(3)-1(a)(1)(v), (4), Proced. & Admin. Regs. While the factual and legal determinations made at the partnership level are conclusive in determining components of outside basis, the ultimate determination of outside basis is made only in a subsequent partner-level affected items proceeding such as we have here. See Gustin v. Commissioner, T.C. Memo. 2002-64; cf. Univ. Heights v. Commissioner, 97 T.C. 278 (1991).

petitioners' long-term capital loss while potentially adding a long-term capital gain.

Petitioners argue that respondent could and should have assessed tax as to the computational adjustment concerning the long-term capital gain when no one timely filed a petition as to the FPAA. We disagree. Petitioners rely erroneously on Olson v. United States, 172 F.3d 1311 (Fed. Cir. 1999), and Bob Hamric Chevrolet, Inc. v. United States, 849 F. Supp. 500 (W.D. Tex. 1994), to support their argument. Unlike there, respondent could not have made an assessment as to the long-term capital gain determination simply by examining petitioners' 1999 Federal income tax return and making mere ministerial adjustments. See, e.g., Olson v. United States, supra at 1318. In fact, petitioners' 1999 Federal income tax return does not even reference the object of the sale underlying the claimed long-term capital loss.[14] Nor do the distributions reported on DIP's 1999

---

[14] Petitioners signed their 1999 Federal income tax return on Apr. 14, 2000, and filed the return on or before Aug. 18, 2000. The return, which was self-prepared, claimed that petitioners had realized a $210,680 passthrough loss from petitioner's grantor trust and did not include any further explanation as to the loss. Petitioner reported the long-term capital loss on a 1999 Form 1041, U.S. Income Tax Return for Estates and Trusts, filed on behalf of his grantor trust. The Form 1041 reported that a long-term capital loss of $5,858,801 was realized during the year "From Partnership, S Corps. & Fiduciaries" and that the loss was "Other K-1 Information". (The Form 1041 did not include any Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc.) The Form 1041 was prepared by BDO Seidman on May 16, 2000, signed by petitioner on Oct. 25,

(continued...)

partnership return appear on petitioners' 1999 Federal income tax return. We also observe that DIP's 1999 partnership return does not reference or identify DII and that DII's 1999 tax return does not indicate that the INVI stock that was the subject of the reported sale was received in a distribution from DIP. We conclude that we have jurisdiction over the deficiency determined in the affected items notice of deficiency.

We now decide whether we have jurisdiction to decide the issue concerning the accuracy-related penalties. When no petition was filed timely as to the FPAA, respondent assessed only that portion of the accuracy-related penalties attributable to the disallowance in the FPAA of DIP's deductions of the short-term capital loss and interest expense. Respondent now concedes that the accuracy-related penalties determined in the affected items notice of deficiency should be dismissed for lack of jurisdiction. Petitioners concur with this concession. So do we.

The applicability of any penalty, addition to tax, or additional amount relating to an adjustment to a partnership item (collectively, partnership item penalties) is generally determined at the partnership level and assessed on the basis of partnership-level determinations. See sec. 6221; see also sec.

_____

[14](...continued)
2000, and filed on or before Oct. 30, 2000.

301.6221-1T(c), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999) (partnership-level determinations include all legal and factual determinations underlying the determination of partnership-level penalties, including partnership-level defenses but not partner-level defenses).  Before the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, 111 Stat. 788, partnership-item penalties were determined at the partner level through the deficiency procedures after the partnership proceedings to which they related were over.  TRA section 1238(b)(2), 111 Stat. 1026, changed that treatment by, inter alia, inserting into section 6230(a)(2)(A)(i) the parenthetical text "other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items".  Under a plain reading of this amendment, the effect of the amendment was to remove partnership-item penalties from the deficiency procedures effective for partnership taxable years ending after August 5, 1997.

Although a plain reading of the statute is ordinarily conclusive, a clear legislative intent that is contrary to the text may sometimes lead to a different result.  See, e.g., Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); United States v. Am. Trucking Associations, 310 U.S. 534, 543 (1940).  No such clear contrary legislative intent is present here; indeed, the legislative history of the statute

supports its plain reading.  In its report underlying the amendment adding the parenthetical text to section 6230(a)(2)(A)(i), the House Committee on Ways and Means explained that it had proposed the amendment because

> Many penalties are based upon the conduct of the taxpayer.  With respect to partnerships, the relevant conduct often occurs at the partnership level.  In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory.  [H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.[15]]

The House committee report goes on to explain that the proposed amendment "provides that the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level.  However, the provision allows partners to raise any partner-level defenses in a refund forum."  Id.

Given the enactment of the amendment, we conclude that the deficiency procedures no longer apply to the assessment of any partnership-item penalty determined at the partnership level, regardless of whether further partner-level determinations are required.  The Secretary in interpreting the amendment has

---

[15] The Senate Finance Committee stated similarly in its report.  See S. Rept. 105-33, at 261 (1997), 1997-4 C.B. (Vol. 2) 1067, 1341; see also H. Conf. Rept. 105-220, at 685 (1997), 1997-4 C.B. (Vol. 2) 1457, 2155 (stating that "The Senate amendment is the same as the House bill" and that "The conference agreement follows the House bill and the Senate amendment, with technical modifications").

concluded similarly.  See sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., quoted <u>supra</u> note 12 (explaining that any penalty related to an adjustment of a partnership item is not subject to the deficiency procedures and may be directly assessed following a partnership proceeding, on the basis of determinations in that proceeding, regardless of whether partner-level determinations may be required).[16]  Because the amendment is applicable to this case, i.e., the relevant taxable year of DIP ended after August 5, 1997, we shall dismiss for lack of jurisdiction the part of this case that pertains to the accuracy-related penalties.  Accord <u>Fears v. Commissioner</u>, 129 T.C. ___ (2007).

We note in closing that we are not unmindful that a plain reading of section 6230(a)(2)(A)(i), as amended by TRA section 1238(b)(2), may sometimes permit (as it apparently does here) the Commissioner to assess a partnership-item penalty before the deficiency to which the penalty relates is adjudicated.  We doubt that the drafters of the statute and the regulations, in excluding partnership item penalties from the deficiency procedures, contemplated a situation like this where the deficiency underlying the partnership-item penalty is

---

[16] See also sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs., effective for partnership taxable years beginning on or after Oct. 4, 2001 (language similar to that in sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., <u>supra</u>).

incorporated in an affected items notice and itself made subject to review under the deficiency procedures before it can be assessed.  All the same, we apply the statute as written in accordance with its plain reading and leave to the legislators the job of rewriting the statute, should they decide to do so, to take into account the situation at hand.  See, e.g., <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. \_\_\_, \_\_\_, 126 S. Ct. 2455, 2459 (2006) (stating that "When the statutory language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms" (citations and internal quotation marks omitted)).  We do not believe that our plain reading of the statute leads to an "absurd or futile result", or produces a result that is "an unreasonable one 'plainly at variance with the policy of the legislation as a whole'".  <u>United States v. Am. Trucking Associations</u>, <u>supra</u> at 543 (quoting <u>Ozawa v. United States</u>, 260 U.S. 178, 194 (1922)).  To be sure, both parties read the statute similarly in requesting the same result that we reach herein as to the partnership-item penalties, and neither party suggests that a plain reading of the statute in this case is unreasonable, absurd, or inconsistent with legislative intent.

To reflect our conclusions and holdings above, we shall grant petitioners' motion to dismiss for lack of jurisdiction as to the accuracy-related penalties.  We shall deny petitioners' motion in all other regards.  We have considered all of the parties' arguments, and all arguments not discussed herein have been rejected as moot, irrelevant, or without merit.

<u>An appropriate order</u>

<u>will be issued</u>.