T.C. Memo. 2013-174

UNITED STATES TAX COURT

ESTATE OF ALBERT SIMON, DECEASED, ELLEN S. SIMON, PERSONAL
REPRESENTATIVE AND ELLEN S. SIMON, Petitioners v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket No. 708-12.                          Filed July 29, 2013.

Lane M. Gensburg, Anthony Calandriello, and Sandra D. Mertens, for
petitioners.

Meso T. Hammoud, for respondent.

MEMORANDUM OPINION

THORNTON, Judge:  This is a partner-level affected items deficiency

proceeding under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA),

[*2] Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648.[1]  Respondent issued to Ellen S. Simon and the Estate of Albert Simon, Deceased, an affected items notice of deficiency for 2000 that determined a $1,293,264 deficiency in their Federal income tax, a $33,172 accuracy-related penalty under section 6662(a), a $450,961 accuracy-related penalty under section 6662(h), and a $117,577 addition to tax under section 6651(a).[2]  The deficiency notice relates to Albert Simon's participation in a Son-of-Boss transaction (transaction) that formally involved a TEFRA partnership, Charlevoix Investment Partners (Charlevoix).  Respondent issued the deficiency notice to petitioners after no one timely challenged a notice of final partnership administrative adjustment (FPAA) related to Charlevoix's corresponding taxable year.

Respondent moves to dismiss this case to the extent that it relates to the accuracy-related penalties (penalties), asserting that section 6230(a)(2)(A)(i) excludes the penalties from a deficiency proceeding as a prerequisite to their assessment.  Petitioners object to respondent's motion and have filed a cross-

------

[1]Subsequent section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated.  Dollar amounts are rounded.

[2]While the face of the deficiency notice states that the $117,577 was determined under sec. 6662, other portions of the notice clarify that the $117,577 was determined under sec. 6651(a).

**[*3]** motion to dismiss the case in full, asserting that the Court lacks jurisdiction because the deficiency notice is invalid.[3]  The deficiency notice is invalid, petitioners claim, because the Internal Revenue Service (IRS) failed to give proper notice of the FPAA.  Respondent has filed an objection to petitioners' motion.

We hold that the IRS gave proper notice of the FPAA and that the deficiency notice is valid.  We also hold that the Court lacks jurisdiction to decide the portion of this case that relates to the penalties and will grant respondent's motion dismissing this case to that extent.  We will deny petitioners' motion in full.

---

[3]Petitioners also argue that the Court lacks jurisdiction because the applicable period of limitations for assessment has expired.  Because the expiration of the period of limitations for assessment is an affirmative defense that does not implicate the Court's jurisdiction, see Davenport Recycling Assocs. v. Commissioner, 220 F.3d 1255, 1259-1261 (11th Cir. 2000), aff'g T.C. Memo. 1998-347; Tapper v. Commissioner, 766 F.2d 401, 403 (9th Cir. 1985); Domulewicz v. Commissioner, 129 T.C. 11, 12 n.4 (2007), aff'd in part, remanded in part on other grounds sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009); Crowell v. Commissioner, 102 T.C. 683, 693 (1994); Badger Materials, Inc. v. Commissioner, 40 T.C. 1061, 1063 (1963); cf. Day v. McDonough, 547 U.S. 198, 205 (2006) ("[a] statute of limitations defense * * * is not 'jurisdictional'"), we reject this argument without further discussion.

[*4]                                    Background

## I.  Introduction

Neither party requested a hearing as to either subject motion, and we conclude that a hearing is not necessary to decide the motions.  For the sole purpose of deciding the motions, we draw the following background information from the agreed-upon allegations in the pleadings and from the uncontroverted statements in the motions and in the accompanying memoranda (including the exhibits attached to the motions and to the memoranda).  Ms. Simon's "legal address" was in Michigan when the petition was filed.

## II.  Background

ASCS Investments, LLC (AIL), is a limited liability company that Mr. Simon wholly owned.  ASCS Investments, Inc. (AII), is an S corporation that Mr. Simon wholly owned.  Charlevoix is a general partnership, the sole partners of which were AIL and an individual whose identity is not relevant to our analysis.  AIL had a 99% interest in Charlevoix's profit, loss, and capital.

Mr. Simon caused Charlevoix to be formed on October 26, 2000, to facilitate the transaction, and he caused Charlevoix's partners to contribute essentially offsetting digital options to Charlevoix incident to the formation.  On November 10, 2000, the partners had purportedly gone long on some of the

[*5] options at a total cost of $5,700,000 and had gone short on the remaining options at a total selling price of $5,643,000. The options terminated according to their terms on December 4, 2000, and Charlevoix purchased publicly traded stock one day later. Approximately one week after that, AIL contributed its interest in Charlevoix to AII, and Charlevoix terminated and distributed its assets (mainly the stock) to AII. AII sold the distributed assets and reported that it realized large capital losses on the sale. The losses were noneconomic losses attributable to inflated bases in the assets.[4] The losses passed through to Mr. Simon as AII's shareholder.

Charlevoix filed a Form 1065, U.S. Return of Partnership Income, for its taxable year from October 26 to December 14, 2000 (2000 return). The 2000 return was both Charlevoix's initial and its final return, and it did not designate a tax matters partner. The 2000 return, which Mr. Simon signed for the partnership on September 15, 2001, listed Charlevoix's address as 1142 Charlevoix Ave., #1, Petoskey, Michigan 49770 (Petoskey address).[5] A Schedule K-1, Partner's Share

---

[4]Apparently, the partners had not treated the "short" options as a liability under sec. 752.

[5]Some documents refer to the street address of the Petoskey address as "1142 Charlevoix Ave., #1", while other documents refer to that street address as "1142 Charleviox Ave. 1" or "1142 Charlevoix Ave., Apartment 1". We refer to

(continued...)

[*6] of Income, Credits, Deductions, etc., included in the 2000 return likewise listed AIL's address as the Petoskey address. The only other Schedule K-1 included in the 2000 return related to the 1% individual partner. The name and address of the individual partner were redacted from the Court's copy of that document.

During 2000 the Petoskey address was the Simons' residential address and the listed address of Charlevoix's principal place of business. Charlevoix, AIL, and AII ceased operation on or shortly after December 14, 2000, and in January 2001 the Simons moved to 09499 Equestrian Way, Charlevoix, Michigan 49720 (Equestrian Way address). The Simons resided at the Equestrian Way address through November 2010.

The IRS audited Charlevoix's 2000 return, and an IRS revenue agent (SL) in Boston, Massachusetts, mailed to the Petoskey address by certified mail a notice of beginning of administrative proceeding (NBAP) dated March 1, 2004, addressed to Charlevoix's tax matters partner in care of Mr. Simon as a "Member".[6] The U.S. Postal Service returned the NBAP to the IRS after

---

[5](...continued)
all of the variations as the Petoskey address.

[6]While the NBAP was addressed to Charlevoix's tax matters partner in care
(continued...)

[*7] unsuccessfully attempting to deliver it on three occasions. SL also mailed to the Petoskey address a letter dated March 1, 2004, addressed to Charlevoix in care of Mr. Simon as a "Member".

SL mailed to the Petoskey address another copy of the NBAP, but dated March 2, 2004, addressed to AIL, "Attn: Mr. Albert Simon, Single Owner". In addition, SL mailed to the Equestrian Way address a copy of the NBAP dated March 2, 2004, addressed to "Albert & Ellen S Simon".

SL mailed to the Equestrian Way address an NBAP dated April 2, 2004, for Charlevoix's taxable year ended December 14, 2000, addressed to Charlevoix's tax matters partner in care of Mr. Simon as a "Member". At or about the same time, SL separately mailed to the Equestrian Way address two other letters, one addressed to Charlevoix's tax matters partner in care of Mr. Simon as a "Member" and the other addressed simply to Charlevoix's tax matters partner.

On April 12, 2004, Mr. and Ms. Simon each signed as to their 2000 taxable year a Form 872-I, Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership. The consent lists the Simons' present

---

[6](...continued) of Mr. Simon as a "Member", the envelope in which the NBAP was mailed (and the accompanying return receipt) was simply addressed to Charlevoix's tax matters partner.

[*8] address as the Equestrian Way address and lists their former address in Naples, Florida. From February 8, 2005, through December 1, 2008, the Simons signed six additional similar consents, each listing the Equestrian Way address as their address.[7] The seventh and final consent extended the period of limitations for assessment through June 30, 2010.

On May 14, 2010, an IRS agent (BK) in St. Paul, Minnesota, mailed to the Petoskey address separate copies of an FPAA for Charlevoix's taxable year ended December 14, 2000, addressed respectively to Charlevoix's tax matters partner and to AIL.[8] The IRS did not mail a copy of the FPAA to Mr. Simon, either individually or as an indirect partner. The FPAA, in part, adjusted to zero the partnership items of other deductions, ordinary dividends, net short-term capital loss, investment income included in portfolio income, net loss from self-employment, distributions of property and money, capital contributions, net loss per books, and cost or other bases in the options. The FPAA, in part, also determined that Charlevoix is disregarded for Federal income tax purposes,

---

[7]The last two consents were signed after Mr. Simon died. Ms. Simon signed those consents on his behalf.

[8]A certified mail list that the U.S. Postal Service stamped as received on May 14, 2010, reports that the IRS separately mailed three copies of the FPAA. The name and the address corresponding to the third copy have been redacted, yet it appears that the third copy was most likely mailed to the 1% partner.

**[\*9]** outside basis is reduced to zero, a 40% penalty applies to the portion of any underpayment attributable to a gross valuation/basis misstatement, and a 20% penalty applies to the portion of any underpayment attributable to negligence or disregard of rules and regulations (or to a substantial understatement of income tax or to a substantial valuation misstatement).  The U.S. Postal Service ultimately returned the FPAAs to the IRS as "Not Deliverable as Addressed--Unable to Forward".

The FPAA was never timely challenged (e.g., by filing a petition in this Court), and the FPAA was defaulted on October 11, 2010.  Respondent subsequently assessed the penalties and the addition to tax of $484,133 ($33,172 + $450,961) and $117,577, respectively, and issued the deficiency notice underlying this case on October 6, 2011.  All items underlying the deficiency in the deficiency notice relate to adjustments to the partnership items of Charlevoix, and the penalties in the deficiency notice are the same penalties determined in the FPAA.

## Discussion

Respondent moves to dismiss this case to the extent of the penalties, asserting that an assessment of the penalties is not subject to the normal deficiency procedures outlined in sections 6211 through 6216.  Respondent asserts that the applicability of the penalties is a partnership-level determination that is outside of

[*10] this Court's jurisdiction in this partner-level proceeding. Petitioners state in their objection to respondent's motion that they do not dispute that penalties of the type we have here are regularly determined in a partnership-level proceeding. They argue, however, that the penalties (and all other items in the deficiency notice) are no longer partnership items required to be determined at the partnership level because, they state, the IRS failed to give proper notice of the FPAA as required by section 6223(a). They assert that neither Charlevoix, AIL, AII, nor Mr. Simon (in his capacity as an indirect partner) received proper notice of the FPAA and that the IRS knew as early as March 2004 that (1) the Petoskey address was no longer a valid address and (2) the proper address was the Equestrian Way address. They assert that the IRS must make a "good faith" effort to provide notice of an FPAA and that the IRS failed that standard here given that the IRS "had sufficient information readily available and directly in the hands of the agents handling the underlying examination to enable the IRS to ascertain the names, addresses and profits interest of all direct and indirect partners when the * * * [FPAA] was issued." They conclude that the Court lacks jurisdiction over the deficiency notice and have cross-moved to dismiss this case on those grounds.

We disagree with petitioners' assertions that the IRS failed to give proper notice of the FPAA and that the deficiency notice is invalid. The IRS must timely

[*11] mail an FPAA to certain partners before assessing a partner with an amount attributable to a partnership item. See secs. 6223(a)(2), (d)(2), 6225(a); Domulewicz v. Commissioner, 129 T.C. 11, 18 (2007), aff'd in part, remanded in part on other grounds sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009); see also Crowell v. Commissioner, 102 T.C. 683, 692 (1994) (noting that an FPAA may be properly mailed even if it is not actually received by either the "tax matters partner" or a "notice partner" within the meaning of section 6231(a)(7) and (8), respectively). For this purpose, the term "partnership item" includes any item of income, gain, loss, deduction, or credit that the Secretary has determined is "more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3); see also sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs. A "computational adjustment" must then be made to the tax liability of a partner to reflect partnership items after the partnership-level proceeding is complete. See Domulewicz v. Commissioner, 129 T.C. at 19; see also secs. 6230(c)(1)(A)(ii), 6231(a)(6). When the making of a computational adjustment requires that facts be determined at the partner level, then the normal deficiency procedures outlined in sections 6211 and 6216 apply and the IRS must issue an affected items notice of deficiency to the partner in order to assess tax attributable to that adjustment. See sec. 6230(a)(2)(A)(i); see also sec.

[*12] 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999).[9]

Neither party disputes that the items underlying the deficiency are computational adjustments that relate to partnership items in the FPAA.  The Court has jurisdiction over the items underlying the deficiency because those items are computational adjustments and the determination of the tax attributable to the adjustments requires that certain facts be determined at the partner level. See Domulewicz v. Commissioner, 129 T.C. at 20; see also Desmet v. Commissioner, 581 F.3d at 303.  Those facts relate to AII's sale of its assets and include the identity of the assets, whether the assets came from Charlevoix, the portion of the assets sold, the holding period for the assets, and the character of any gain or loss.  See Domulewicz v. Commissioner, 129 T.C. at 20; see also Desmet v. Commissioner, 581 F.3d at 303.  The Court likewise has jurisdiction over the section 6651(a) addition to tax because that addition to tax is attributable to the deficiency.  See sec. 6665(a) and (b)(1).  The penalties, however, are a

---

[9]Effective for partnership taxable years beginning after October 3, 2001, these temporary regulations (and sec. 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987), discussed infra) have been replaced with final regulations. See secs. 301.6223(c)-1, 301.6231(a)(6)-1, Proced. & Admin. Regs.  The referenced temporary regulations apply because Charlevoix's taxable year in issue began on October 26, 2000.

**[\*13]** different story. The Court lacks jurisdiction in this partner-level proceeding to redetermine the accuracy-related penalties because the deficiency procedures do not apply to the assessment of penalties determined at the partnership level, regardless of whether partner-level determinations must be made to assess the penalty. See sec. 6230(a)(2)(A)(i); Domulewicz v. Commissioner, 129 T.C. at 22-24; cf. Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 150-155 (2012) (holding that where the overstatement of a purported partner's basis in property received upon liquidation of a disregarded partnership is attributable to claiming that capital contributions were made to the partnership, the underpayment of tax resulting from the sale of that property is attributable to the reduction to zero of the claimed capital contributions to the partnership and the Court has jurisdiction in the partnership-level proceeding to determine the applicability of the gross valuation misstatement penalty to the loss resulting from the sale of the property); Rawls Trading, L.P. v. Commissioner, T.C. Memo. 2012-340, at \*28-\*42 (deciding the applicability of defenses to accuracy-related penalties in a TEFRA partnership-level proceeding involving Son-of-Boss transactions after deciding that the TEFRA entities were disregarded as shams (among other reasons)).

[*14] Petitioners seek contrary conclusions, arguing that the items in the deficiency notice are no longer partnership items because the IRS failed to give proper notice of the FPAA as required by section 6223(a). We disagree.[10] Section 6223(a) requires that the IRS notify certain partners of the beginning and end of a partnership audit. The IRS generally must "use the names, addresses, and profits interests shown on the partnership return" to determine to whom and where to send that notice. Sec. 6223(c)(1). Where an "indirect partner" owns an interest in a partnership through a "pass-thru partner" who otherwise would be entitled to notice, the IRS must give notice to the indirect partner, in lieu of the pass-thru partner, if the IRS is properly furnished with information as to the indirect partner's name, address, and indirect profits interest in the partnership. See sec. 6223(c)(3); see also sec. 6231(a)(9) (defining a "pass-through partner" as "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership"); sec. 6231(a)(10) (defining an "indirect partner" as a "person holding an interest in a partnership through 1 or more pass-through partners"). If the IRS fails to give proper notice to

_____

[10]We have jurisdiction in this partner-level affected items proceeding to decide whether the affected items notice of deficiency is invalid on the ground that the IRS failed to properly notify a partner of the underlying partnership-level proceeding. See Crowell v. Commissioner, 102 T.C. at 691.

[*15] a partner, then the partner may elect to have the adjustments (or ensuing decision or settlement agreement) apply to the partner if the period in which to challenge the FPAA has expired without the filing of such a challenge or if a decision resulting from a challenge is final.  See sec. 6223(e)(2).  If the partner does not make this election, then the partnership items of the partner for the partnership taxable year to which the proceeding relates are characterized as nonpartnership items.  See id.

The IRS' duty to give a direct or indirect partner notice under section 6223(a) arises only to the extent that the IRS is furnished with readily available information containing the name, address, and profits interest of the partner in either or both of two ways.  See Murphy v. Commissioner, 129 T.C. 82, 86 (2007).  First, the IRS may be furnished the referenced information through the tax return of the partnership under audit.  See id. at 86-87; see also sec. 6223(c)(1).  Second, the IRS may be furnished the referenced information through a written statement that meets the requirements of section 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).[11]  See Murphy v. Commissioner,

---

[11]Sec. 301.6223(c)-1T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987), requires that the written statement contain certain minimal information and be properly filed with the IRS and states that the IRS will take the additional information in the statement into account if received at least 30

(continued...)

**[*16]** 129 T.C. at 87; see also sec. 6223(c)(2); sec. 301.6223(c)-1T(a), Temporary Proced. & Admin. Regs., supra. In addition, the IRS may (but is not required to) use other readily available information that it possesses (e.g., a change in address shown on a partner's return). Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., supra. The IRS, however, has no obligation to search its records to obtain information not provided to it under either of the ways set forth in section 6223(c)(1) and (2). Id.

Petitioners do not dispute that the IRS mailed a copy of the FPAA to Charlevoix's partners at the address shown on the 2000 return and that no additional information was given to the IRS in the manner prescribed in the temporary regulations. They assert in their objection to respondent's motion that,

---

[11](...continued)
days before the mailing of the notice to the partner. To be filed properly, the statement must be filed with the service center where the partnership return is filed, unless the person filing the statement knows that the NBAP was already mailed to the tax matters partner, in which case the statement should be filed with the office that mailed the NBAP. Sec. 301.6223(c)-1T(b)(2), Temporary Proced. & Admin. Regs., supra. To set forth the required minimal information, the statement must: (1) identify the partnership, each partner for whom the information is provided, and the person providing the information by name, address, and taxpayer identification number; (2) explain that the statement is submitted to correct or supplement earlier information regarding the partners in the partnership; (3) specify the taxable year to which the information pertains; (4) set forth the corrected or additional information; and (5) be signed by the person providing the information. Sec. 301.6223(c)-1T(b)(3), Temporary Proced. & Admin. Regs., supra.

[*17] during discovery, they obtained IRS files "replete with evidence that, beginning in April 2004, the IRS used the Equestrian Way Address for both the Petitioners individually and for Charlevoix and its Tax Matters Partner". They assert in their memorandum that

> implicit in the TEFRA statutory scheme is a requirement that the IRS must make a "good faith" effort to provide notice to a taxpayer of an NFPAA. IRC Section 6223(c)(1) generally directing the IRS to use the address information listed on the taxpayer's partnership return does not excuse or vitiate the IRS's obligation to comport with due process and make a "good faith" effort in mailing the NFPAA to a current address.

They conclude that proper notice of the FPAA requires that the IRS have sent the FPAA to the Equestrian Way address in lieu of, or at least in addition to, the address shown on the 2000 return.

We disagree with petitioners' conclusion. Petitioners have cited no opinion holding that the IRS must send an FPAA to an address other than an address shown on the partnership return under audit or on a statement that meets the requirements of section 301.6223(c)-1T, Temporary Proced. & Admin. Regs., supra. Nor are we aware of any such opinion.

Petitioners rely selectively upon section 6223(c)(2), which provides: "The Secretary shall use additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the

**[\*18]** <u>Secretary</u>." (Emphasis added.) Ignoring the text which we have emphasized, petitioners draw from the word "shall" that the IRS must use all information in its possession, notwithstanding how it was obtained. But when section 6223(c)(2) is read in its entirety, as it must be, it explicitly establishes that the IRS is required to use additional information only if it is furnished in the manner set forth in the regulations. As previously discussed, petitioners did not furnish additional information in the manner prescribed by the regulations.

Petitioners also rely upon <u>Stone Canyon Partners v. Commissioner</u>, T.C. Memo. 2007-377, <u>aff'd sub nom.</u> <u>Bedrosian v. Commissioner</u>, 358 Fed. Appx. 868 (9th Cir. 2009), to support their conclusion. There, in a setting factually similar to the setting at hand, the partnership (SCP) filed a partnership return for 1999 showing its address as Stone Canyon Road. SCP had two partners, a limited liability company and an S corporation, each wholly owned by the taxpayers (a husband and wife), and the Schedules K-1 attached to the return reported that the partners had the same address as the partnership. The partnership return did not list the taxpayers' address. On February 2, 2005, the IRS mailed an NBAP to the taxpayers at their residential address on Rocco Drive. Approximately two weeks later, the taxpayers' representative sent a letter to the revenue agent stating that SCP's new address was North Canon Drive. Approximately two months after that,

**[\*19]** the representative told the revenue agent that the North Canon address was no longer a good mailing address, that correspondence should henceforth be mailed to the taxpayers' private mailbox on Beverly Glen Circle, and that the taxpayers still resided at the Rocco address. Three days after that, the IRS mailed copies of an FPAA to the Stone Canyon address, to the North Canon address, and to the Beverly Glen address. The IRS did not mail a copy of the FPPA to the Rocco address.

The Court held in Stone Canyon Partners that the mailing of the FPAA to the Stone Canyon address met the notice requirement in section 6223(a). Petitioners read our opinion in Stone Canyon Partners to uphold the notice requirement because the IRS made a "good faith" attempt to notify all affected persons of the FPAA. Petitioners draw from the opinion a "good faith" principle that requires the IRS to mail a copy of an FPAA to every address at which the IRS knows that an affected partner may be contacted. Applying that principle here, petitioners continue, proper notice required that the IRS have mailed a copy of the FPAA to the Equestrian Way address at which the IRS knew that Mr. Simon resided.

[*20] We do not read our opinion in <u>Stone Canyon Partners</u> so broadly as petitioners do.[12] The Court held that the address shown on the partnership return was a proper address for sending notice of the FPAA even though an IRS employee knew of a different address and had sent correspondence to that address. In addition, the Court disagreed with the taxpayers' argument that the IRS' knowledge of the Rocco address meant that the IRS had to mail a copy of the FPAA to that address, stating in part:

> SCP never updated in the prescribed manner the address that was on the partnership return for 1999. * * * section 301.6223(c)-1T(b)(1) and (3), Temporary Proced. & Admin. Regs., <u>supra</u>, provides the procedure for furnishing respondent with additional information. Petitioner argues that respondent mailed numerous items to Rocco and therefore was aware of the address. The mailing of correspondence does not alter respondent's obligations relating to the mailing of the FPAA. <u>Triangle Investors Ltd. Pshp. v. Commissioner, supra</u> at 616 [95 T.C. 610 (1990)[13]]. Petitioner never followed the

---

[12]Petitioners also draw their good-faith principle from <u>Crowell v. Commissioner</u>, 102 T.C. at 693, and <u>Byrd Invs. v. Commissioner</u>, 89 T.C. 1, 6-7 (1987), <u>aff'd without published opinion</u>, 853 F.2d 928 (11th Cir. 1988). Petitioners' reliance on those cases to support their principle is equally misplaced.

[13]In <u>Triangle Investors Ltd. P'ship v. Commissioner</u>, 95 T.C. 610, 611-612 (1990), the IRS mailed the FPAA to the address on the partnership return although the revenue agent who audited the partnership return knew that the partnership's current address was different, i.e., the tax matters partner had submitted a power of attorney form to the IRS stating that the IRS should use the new address and had orally advised the revenue agent of the new address. The Court held that the IRS had not been properly advised of a change of address for notice purposes, stating:

(continued...)

[*21] procedures outlined in the regulations for furnishing respondent with additional information pertaining to a change of address of SCP, or the TMP, JCB. As a result, the address on the 1999 Form 1065, the Stone Canyon address, was a proper address which to mail the FPAA for 1999.

Accord Int'l Strategic Partners, LLC v. Commissioner, 455 Fed. Appx. 91 (2d Cir. 2012); Gaughf Props., L.P. v. Commissioner, 139 T.C. 219 (2012); see also Triangle Investors Ltd. P'ship v. Commissioner, 95 T.C. 610, 611-612 (1990).

Due process requires that notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Byrd Invs. v. Commissioner, 89 T.C. 1, 6-7 (1987), aff'd without published opinion, 853 F.2d 928 (11th Cir. 1988). The Secretary, in part through specific congressionally delegated authority, has provided a reasonable regulatory procedure to meet that requirement. The IRS followed this general procedure by mailing separate copies

---

[13](...continued)
   In light of the detailed instructions as to how updating partnership information is to be furnished, it cannot be said that * * * [the] verbal exchanges with the revenue agent were sufficient to notify the appropriate IRS office of the partnership's change of address, * * * [and] the power of attorney in this case did not alter the IRS's obligations relating to the mailing of the FPAA * * * [Id. at 616.]

**[\*22]** of the FPAA to the Petoskey address addressed respectively to Charlevoix's tax matters partner and to AIL, the only partners (other than the 1% partner) whom the 2000 return identified and provided an address for.[14]  Accord Int'l Strategic Partners, LLC v. Commissioner, 455 Fed. Appx. 91.

Petitioners have not explained why they did not send in the referenced statement to change their address.[15]  They were responsible for updating their contact information in the manner prescribed in the temporary regulations, to the extent that they believed any such update was appropriate.  They did not update their contact information in that manner.  The fact that an FPAA was not mailed to the Equestrian Way address is due to their own inaction.

We will grant respondent's motion and dismiss this case for lack of jurisdiction to the extent of the penalties.  In addition, we will deny petitioners' cross-motion because the IRS gave proper notice of the FPAA and section 6223(e)(2) therefore does not operate to convert the partnership items to

---

[14]We note for completeness that the record does not establish that the particular IRS office that mailed the FPAA knew that the Petoskey address was an invalid address.

[15]Nor have petitioners explained why the 2000 return, which Mr. Simon signed on behalf of Charlevoix in September 2001, and the attached Schedule K-1 issued to AIL, both report those entities' address as the Petoskey address, given that the entities had ceased operation and the Simons had moved to the Equestrian Way address many months before.

**[*23]** nonpartnership items as petitioners contend.  We have considered all arguments, and to the extent not discussed, we have rejected those arguments as without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.