T.C. Memo. 2018-191

UNITED STATES TAX COURT

ESTATE OF JAMES P. KEETER, DECEASED, GARRY L. HOLTON, JR., AND THOMAS W. SCHAEFER, CO-EXECUTORS, AND JULIE KEETER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6771-16.                    Filed November 15, 2018.

N. Jerold Cohen and Rebecca M. Stork, for petitioners.

Gerald A. Thorpe, for respondent.

MEMORANDUM OPINION

GOEKE, Judge:  Pending before the Court is petitioners' motion to restrain the assessment or the collection of tax or to order the refund of the amount

[*2] collected.[1]  This case is based on affected item notices of deficiency issued to James and Julie Keeter following the completion of a partnership-level proceeding under the unified audit and litigation partnership procedures (TEFRA).  Petitioners argue that the notices of deficiency are invalid and the Court lacks jurisdiction.[2] Respondent argues that the notices are valid and acquiesces to petitioners' motion to restrain the assessment and the collection of tax if the Court determines that the notices are valid.  We find the notices are valid, and we will grant petitioners' motion to restrain the assessment and collection of tax.

The validity of the notices of deficiency depends on whether a partner-level determination is required following the decision in the TEFRA case.  Petitioners argue that no partner-level determination is required because the partnership was a sham, and a partner's outside basis in a sham partnership cannot exceed zero. Respondent agrees that a partner's outside basis in a sham partnership is zero. However, he contends that a partner-level determination is required where the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All amounts are rounded to the nearest dollar.

[2]Petitioners argue that if we find the notices invalid, we nevertheless have jurisdiction to enjoin the assessment and the collection of tax.  Respondent argues that we lack jurisdiction if the notices are invalid.  As we find the notices valid, we do not address petitioners' argument.

[*3] partners have claimed loss deductions on the sale of assets received in a liquidating distribution from the sham partnership as petitioners have in this case. Accordingly, he argues that the deficiency procedures apply, the notices of deficiency are valid, and we have jurisdiction over the deficiencies and the authority to enjoin the assessment and the collection of tax. We hold that the notices are valid and we have jurisdiction over this case.

Background

The background facts are based on the pleadings and attached exhibits, the parties' filings with respect to petitioners' motion, including respondent's objection, the parties' supporting memoranda and attached exhibits, and other material in the Court's record. The parties' written statements of fact to the Court have not been disputed.

Petitioners are a widow and her deceased husband's estate. Julie Keeter resided in Florida at the time of the petition's filing. The estate had a mailing address in Georgia. The record does not indicate either executor's State of residence. In the petition, petitioners state that the estate's legal residence is in Georgia.

James and Julie Keeter filed joint tax returns for 1999 through 2003. During 1999 the Keeters engaged in a tax shelter transaction referred to as the

[*4] Bond Linked Issue Premium Structure (BLIPS) through Sanford Strategic Investment Fund, LLC (Sanford), a partnership for Federal tax purposes. The objective of the tax shelter was to inflate the tax shelter investor's outside basis in a partnership to generate a tax loss on the partner's subsequent sale of property received in a liquidating distribution from the partnership.

Under the BLIPS tax shelter the investor would organize a single-member limited liability company (LLC) that would obtain a premium loan consisting of a principal amount and a substantial additional premium with an above-market interest rate. Shasta Strategic Inv. Fund, LLC v. United States (Shasta Strategic), No. C-04-04264-RS, 2014 WL 3852416, at *2 (N.D. Cal. July 31, 2014). The premium amount of the loan was set to equal the investor's desired tax loss. Id. The investor also made a capital contribution to the LLC of approximately 7% of the premium. Id. The LLC would contribute all the funds to an investment fund, also organized as an LLC (second LLC), and the second LLC would assume the liability to repay the loan. Id. at *3. For purposes of calculating the investor's outside basis in the second LLC, the investor would treat the obligation to repay the premium portion of the loan as contingent and not as a liability assumed by the LLC under section 752. Id. As a result the investor calculated his outside basis as equal to the premium plus his capital contribution, resulting in an inflated outside

[*5] basis. Id.; see secs. 722 (providing that a partner's outside basis in a partner interest acquired by a contribution of property equals the contributing partner's adjusted basis in the property plus any gain recognized to the contributing partner under section 721(b)), 733 (providing that a partner's outside basis increases for capital contributions to the partnership and decreases for the partner's liabilities assumed by the partnership). The second LLC would purchase foreign currency assets. After a brief time, typically 60 days, the investor would exit the BLIPS tax shelter. For the investors to obtain the tax shelter benefits, the LLC would terminate; it would sell certain assets, repay the loan, and distribute a small amount of foreign currency and stock to the investor. The investor would claim inflated bases in the distributed assets on the basis of his inflated basis in the LLC, generating tax losses on the investor's sales of the distributed assets.

As part of the tax shelter the Keeters received a liquidating distribution of marketable securities (stock) and foreign currency during 1999 from Sanford. The Keeters treated the distributed assets as having adjusted bases in their hands equal to their outside basis in Sanford pursuant to section 732(b). That same year they sold the stock and a portion of the foreign currency. They sold the remainder of the currency during 2000 through 2002. For 1999 the Keeters claimed a capital loss deduction on the sale of the stock and an ordinary loss deduction on the sale

[*6] of the foreign currency; for 2000 through 2002 they claimed ordinary loss deductions on the sales of the currency. The losses were generated upon the sales of the distributed assets as a result of the Keeters' inflated outside basis in Sanford.[3]

On July 23, 2004, respondent issued a notice of deficiency for 1999 through 2001 to the Keeters (2004 notice) for tax deficiencies arising from the tax shelter. In response to the 2004 notice the Keeters made payments to the Internal Revenue Service (IRS) for 1999 and 2000 in excess of $16 million. The IRS also applied an overpayment from 2006 of approximately $3.2 million for 2001. Subsequently, respondent determined that he had issued the 2004 notice in error because the TEFRA partnership-level proceeding had not been resolved and notified the Keeters of the error in November 2007. In February 2008 the Keeters filed a refund claim for the payments and credit. The IRS denied the refund claim on the basis that the amounts were advance payments and not overpayments of tax.

On July 19, 2004, respondent issued a notice of final partnership administrative adjustment (FPAA) for Sanford's December 22, 1999, tax period. In the FPAA he determined that Sanford was a sham and disregarded for tax purposes, the BLIPS transaction lacked economic substance, and the Keeters

[3]The Keeters are partners in Sanford as defined in sec. 6231(a)(2)(B).

[*7] engaged in the transaction for tax-avoidance purposes. The tax matters partner filed a complaint in the District Court for the Northern District of California seeking a readjustment of the partnership items in the FPAA. Sanford Strategic Inv. Fund, LLC v. United States, No. C-04-04398-RS (N.D. Cal. filed Oct. 18, 2004). The case was consolidated for trial with other cases involving BLIPS tax shelters. The District Court granted summary judgment for the Government. Shasta Strategic, 2014 WL 3852416, at *1. The District Court examined the economic substance of the BLIPS transactions and held that they lacked economic substance and should be disregarded for Federal tax purposes. Id. at *5-*9. The District Court did not specifically address whether the LLCs were shams. On January 20, 2015, the District Court entered its final judgment for the Government with respect to all adjustments to partnership items in the FPAA except for one issue not relevant here. Sanford Strategic Inv. Fund, LLC, No. C-04-04398-RS (N.D. Cal. Jan. 20, 2015).

On December 18, 2015, respondent issued a notice of deficiency to James and Julie Keeter for each year from 1999 through 2003 relating to affected items attributable to the TEFRA partnership proceeding. He disallowed the capital and ordinary loss deductions that the Keeters claimed arising from the sales of the stock and currency, respectively, and determined that the Keeters realized capital

[*8] gain and ordinary income on the sales, respectively. He also made adjustments to other items, including itemized deductions and exemptions, on the basis of the increase in the Keeters' adjusted gross income resulting from the disallowance of the loss deductions. In the notices respondent determined that the Keeters had adjusted bases in the stock and the foreign currency greater than zero.

On that same date respondent issued notices of computational adjustment for 1999 and 2000 for adjustments attributable to the TEFRA proceeding that respondent determined did not require partner-level determinations. The adjustments in the notices of computational adjustment are separate from the adjustments determined in the notices of deficiency for 1999 and 2000 and relate to adjustments of the Keeters' distributive share of the income, loss, or deduction from Sanford. On March 17, 2016, respondent assessed the deficiencies asserted in the affected item notices as a protective measure. In their petition, petitioners raised an issue relating to the application of the Keeters' advance payments and the 2006 overpayment to their tax liabilities.

The issue for consideration is whether the adjustments in the notices of deficiency attributable to the TEFRA decision require a partner-level determination and thus give us jurisdiction over this case. We hold that they do

**[*9]** and that we have jurisdiction. Accordingly, we have jurisdiction to enjoin the assessment and the collection of tax, and we grant petitioners' motion.

Discussion

Section 6213(a) provides that the Commissioner is generally prohibited from assessing and collecting tax without first issuing a notice of deficiency. The prohibition on assessment extends during the time a petition may be filed in this Court, during the pendency of any proceeding actually brought, and until the decision of the Court becomes final. Sec. 6213(a). The Court has jurisdiction to enjoin the assessment and the collection of a tax deficiency that the Court has jurisdiction to redetermine. Sec. 6213(a); see Meyer v. Commissioner, 97 T.C. 555, 560-561 (1991). We have jurisdiction to redetermine a deficiency if the Commissioner issues a valid notice of deficiency and the taxpayer files a timely petition. Sec. 6214(a); GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000). We must first determine whether the notices of deficiency are valid and we have jurisdiction over the tax deficiencies before we can enjoin the assessment or the collection of tax.

As a general rule, partnerships do not pay tax, and items of partnership income, loss, deduction, and credit are reflected on the partners' individual tax returns. See sec. 701. The TEFRA audit and litigation procedures under sections

**[*10]** 6221 through 6234 apply to partnership items. Adjustments to partnership items from a TEFRA partnership-level proceeding may result in adjustments to the tax liability of the individual partners. Once the partnership items become final, the Commissioner generally must initiate further action at the partner level to adjust an individual partner's tax liability. An affected item is "any item to the extent such item is affected by a partnership item." Sec. 6231(a)(5).

There are two types of affected items: one that does not require a partner-level determination and one that does. Where the adjustment to the affected item does not require a partner-level determination (computational adjustment), the adjustment is not subject to the deficiency procedures under sections 6211 through 6216. A "computational adjustment" is the change in the partner's tax liability to properly reflect the treatment of a partnership item under TEFRA. Sec. 6231(a)(6). The Commissioner may immediately assess the resulting tax deficiency from the computational adjustment against the partner without issuing a notice of deficiency. Sec. 6230(a)(1) and (2)(A)(i); sec. 301.6231(a)(5)-1(b), Proced. & Admin. Regs. In such case the partner does not have access to a prepayment forum to challenge the computational adjustment and must file a refund claim. See sec. 6230(a)(1), (c)(4). For an adjustment that does not require a partner-level determination, a notice of deficiency would be invalid to the extent

**[*11]** it pertains to that adjustment. Conversely, an adjustment to an affected item that requires a partner-level determination is subject to the deficiency procedures, and the Commissioner must issue a notice of deficiency to the partner before assessing the tax. Sec. 6230(a); sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs. When an adjustment to an affected item requires a partner-level determination, the partner has a prepayment forum to challenge the Commissioner's determination. Sec. 6230(a)(2)(A).

A notice of deficiency is valid if a partner-level determination is required before the Commissioner may assess the resulting tax deficiency. Sec. 6230(a)(2)(A)(i). Both parties agree that the TEFRA partnership-level case effectively determined that Sanford was a sham and disregarded for Federal tax purposes.[4] Petitioners argue that no partner-level determination is required to adjust a purported partner's outside basis to zero in a sham partnership because a taxpayer cannot have a basis in an asset that does not exist for tax purposes, citing Woods v. United States, 571 U.S. 31 (2013). According to petitioners' argument the adjustment of outside basis to zero at the partner level following a partnership-

---

[4]We do not address the parties' position that the partnership-level case effectively determined that the partnership was a sham. We do not need to determine for purposes of petitioners' motion whether the case so held as we hold that even if the partnership was a sham, a partner-level determination is required relating to the assets that Sanford formally distributed to the Keeters.

**[*12]** level proceeding that finds the partnership to be a sham does not require a partner-level determination or the issuance of a notice of deficiency before assessment of the resulting tax. Accordingly, petitioners argue that the notices of deficiency are invalid and we lack jurisdiction. Respondent contends that even if outside basis is always zero for a sham partnership, partner-level determinations are required in this case. He contends that partner-level determinations are required relating to the assets distributed to the Keeters from Sanford. He argues that the notices of deficiency are valid and we have jurisdiction. We agree with respondent.

The notices of deficiency adjusted loss deductions claimed by the Keeters on the sales of the stock and currency they received in a liquidating distribution from Sanford. In general, when a partnership distributes an asset (other than money) to a partner other than in liquidation, the partner's basis in the asset equals the partnership's adjusted basis in the asset. Sec. 732(a). When a partnership interest is liquidated, the partner's basis in property (other than money) received in a liquidating distribution from the partnership generally equals the partner's outside basis in the partnership. Sec. 732(b). The Keeters' outside bases in the stock and the foreign currency received in the liquidating distribution from Sanford would equal their (inflated) outside basis in Sanford. See sec. 732(b). As

[*13] Sanford was a sham, petitioners argue the Keeters' outside basis must be zero and there is no need for a partner-level determination.

When a partnership is a sham and disregarded for Federal tax purposes, the activities of the partnership are deemed to be engaged in directly by the purported partners. A disregarded partnership has no identity separate from its partners. See 6611, Ltd. v. Commissioner, T.C. Memo. 2013-49, at *61. Accordingly, there can be no capital contributions to the purported partnership or distributions from the purported partnership. See id. The purported partner would hold the purported partnership's assets directly, and his adjusted bases in the assets would be determined under section 1012(a). See sec. 1012(a) (providing the basis of property is generally its cost). The putative partner would not have an adjusted basis in an asset received in a liquidating distribution that carries over from his outside basis under section 732(b). The District Court in the partnership-level TEFRA case held that the BLIPS transactions, including the loans and capital contributions, lacked economic substance and were disregarded for Federal tax purposes. Shasta Strategic, 2014 WL 3852416, at *9. Moreover, a partner's outside basis in his partnership interest is generally an affected item that must be adjusted at the partner level. Sec. 6231(a)(1); see Woods, 571 U.S. at 42; Thompson v. Commissioner, 729 F.3d 869, 873 (8th Cir. 2013), rev'g and

**[\*14]** remanding 137 T.C. 220 (2011); Petaluma FX Partners, LLC v. Commissioner, 591 F.3d 649, 654-655 (D.C. Cir. 2010), aff'g in part, rev'g and remanding in part 131 T.C. 84 (2008).

We hold that the adjustments to the loss deductions on the sales of the stock and the foreign currency are affected items that require partner-level determinations. Partner-level determinations are required to adjust the loss deductions including partner-level determinations relating to the Keeters' holding periods of the stock and currency, the character of the gain or loss, and whether the stock sold by the Keeters in 1999 and the foreign currency sold in 1999 through 2003 were the stock and currency distributed by Sanford.[5] See Napoliello v. Commissioner, 655 F.3d 1060 (9th Cir. 2011), aff'g T.C. Memo. 2009-104; Domulewicz v. Commissioner, 129 T.C. 11, 20 (2007), aff'd in relevant part, remanded in part sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009). Petitioners argue that in the notices of deficiency respondent did not in fact

---

[5]In the notices of deficiency respondent also determined affected item adjustments for itemized deductions and exemptions. Although these adjustments are mathematical computations based on applicable statutory limitations, they are affected items that require partner-level determinations because they are attributable to the increase in the Keeters' adjusted gross income from the disallowance of the loss deductions on the sales of the stock and the foreign currency that requires partner-level determinations. See sec. 301.6231(a)(5)-1(a), Proced. & Admin. Regs.

[*15] make any determinations at the partner level. However, the deficiency procedures apply even though the resulting partner-level determinations may not alter the result. "Neither the Code nor the regulations * * * require that partner-level determinations actually result in a substantive change to a determination made at the partnership level." Domulewicz v. Commissioner, 129 T.C. at 20. Moreover, in the notices of deficiency respondent did not determine that the distributed assets had adjusted bases of zero. Rather, he determined that the assets had adjusted bases greater than zero.

As we have found that the adjustments require partner-level determinations, the deficiency procedures apply. The notices of deficiency are valid, and we have jurisdiction over this case. Likewise, the deficiency procedures apply to the other affected items adjusted in the notices of deficiency, including certain adjustments to itemized deductions based on the applicable statutory limitations period for adjusted gross income as a result of the increases to the Keeters' adjusted gross income from the disallowance of the loss deductions. See sec. 301.6231(a)(5)-1(a), Proced. & Admin. Regs.

We will grant petitioners' motion to enjoin the assessment and the collection of tax. We will deny as untimely that part of petitioners' motion that seeks a refund. We have jurisdiction to order a refund of overpayments

**[*16]** determined by this Court. Sec. 6512(b); <u>Estate of Quick v. Commissioner</u>, 110 T.C. 440, 443 (1998); <u>see</u> sec. 6402(a) (granting the Secretary authority to credit an overpayment to any tax liability). As we have not determined whether there is an overpayment, we do not have authority to order a refund.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

<u>An appropriate order will be issued</u>.